[No. B112690. Second Dist., Div. One. Oct. 29, 1997.]

SCHOOL DISTRICT OF OKALOOSA COUNTY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF ORANGE et al., Real Parties in Interest.

**COUNSEL**

Seyfarth, Shaw, Fairweather & Geraldson and Thomas J. Weiss for Petitioner.

No appearance for Respondent.

Howarth & Smith, Don Howarth, Suzelle M. Smith, Kenneth S. Tune and Katy Jacobs for Real Parties in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—The issue in this multi-defendant case is whether the trial court must grant a late-named defendant's peremptory challenge (Code Civ. Proc., § 170.6),[1] notwithstanding that the time within which the other defendants could have challenged the judge has long since expired, and notwithstanding that the case has been assigned to one judge as "complex litigation." Whatever considerations there may be in favor of a rule that would both enhance the trial court's ability to control its caseload *and* discourage the sort of gamesmanship that occurred in this case, the statute gives the late-appearing defendant the right to exercise its challenge within 10 days after its appearance. (§ 170.6, subds. (2), (3).) Since the challenge filed in this case was filed within that time, it should have been granted.

### BACKGROUND

In December 1993, 14 governmental entities sued about 50 other governmental and private entities (many from outside of California) to recover millions of dollars misappropriated through several investment schemes. The case was filed in the San Francisco Superior Court but was transferred to Los Angeles in June 1994, where it was assigned to one judge for all purposes (Hon. Victor Chavez). None of the parties moved to disqualify Judge Chavez. In November 1996, Judge Chavez designated this action as "complex litigation." (See Super. Ct. L.A. County Rules, rule 7.6(d).) In January 1997, at which time Judge Chavez became the Assistant Presiding Judge of the Los Angeles Superior Court, the case was reassigned for all purposes to another judge (Hon. James Bascue). None of the parties moved to disqualify Judge Bascue.

While the case was still pending before Judge Chavez, several defendants separately moved to quash service of summons, all contending their contacts with California were insufficient to permit an exercise of in personam jurisdiction. Judge Chavez denied all of those motions. After the case was transferred to Judge Bascue, another defendant moved to quash on the same grounds raised in the prior motions. On April 28, 1997, Judge Bascue denied that motion. Meanwhile, on April 10, the School District of Okaloosa County, Florida, was named as a Doe defendant (§ 474) and, shortly thereafter, Okaloosa was served in Florida. On May 14, Okaloosa's lawyer

---

[1] All section references are to the Code of Civil Procedure.

(Thomas J. Weiss, who represents a number of defendants and has been involved in this litigation since before it was assigned to Judge Bascue) called Plaintiff's lawyer (Katy Jacobs) and told her that unless Plaintiffs dismissed Okaloosa, Okaloosa would file a motion under section 170.6 to disqualify Judge Bascue.

Plaintiffs declined the offer. On May 19, Okaloosa filed its disqualification motion and also filed a motion to quash service of summons. On May 23, Plaintiffs filed a memorandum contesting the timeliness and propriety of Okaloosa's disqualification motion. On May 28, Judge Bascue struck the disqualification motion as untimely, finding that the "statutory time for the defense side to issue such a challenge has long expired and this court has, prior to this filing, issued numerous merit rulings."[2] The hearing on Okaloosa's motion to quash was continued to June 27.

Okaloosa filed a petition for a writ of mandate, asking us to compel Judge Bascue to grant the disqualification motion. We issued an order to show cause, stayed further proceedings in the trial court, and set the matter for hearing.

## DISCUSSION

Okaloosa contends the filing of its disqualification motion "within 10 days after [its] appearance" was timely. We agree.

### A.

As relevant, section 170.6 provides that "[a]ny party to or any attorney appearing in any . . . action . . . may establish . . . prejudice [by a judge against any party or attorney] by . . . written motion . . . supported by affidavit or declaration under penalty of perjury . . . . If directed to the trial of a cause which has been assigned to a judge for all purposes, the motion shall be made to the assigned judge . . . by a party within 10 days after notice of the all purpose assignment, *or if the party has not yet appeared in the action, then within 10 days after the appearance. . . . [¶] . . . [I]n actions . . . where there may be more than one plaintiff or . . . more than one defendant . . . appearing in the action . . . , only one motion for each side may be made in any one action . . . .*" (§ 170.6, subds. (2), (3), italics added.)

---

[2]At the time the trial court ruled on the disqualification motion, Okaloosa had not had an opportunity to file opposition to the memorandum in which Plaintiffs contested the timing and propriety of the challenge. After Judge Bascue issued his ruling, Okaloosa filed an ex parte application for reconsideration, supported by Mr. Weiss's declaration. Judge Bascue refused to reconsider his decision.

It is undisputed that Okaloosa had not appeared at any time before it filed its disqualification motion. Since its appearance occurred on the same day it moved to disqualify Judge Bascue (*La Seigneurie U.S. Holdings, Inc.* v. *Superior Court* (1994) 29 Cal.App.4th 1500, 1504 [35 Cal.Rptr.2d 175] [" 'appearance' as it is used in section 170.6 consistently has been interpreted to mean 'general appearance' "]; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 184, pp. 747-748 [a defendant makes a general appearance when he takes any part in the action or proceeding]), it follows that its disqualification motion was filed "within 10 days after [its] appearance." (§ 170.6, subd. (2).) Under the plain language of the statute, therefore, the motion was timely and should have been granted. To avoid this result, Plaintiffs offer several arguments, none of which have merit.

## B.

Plaintiffs contend Okaloosa's disqualification motion was untimely because the trial court had already made a "determination of contested fact issues relating to the merits" of the case when it ruled on the other defendants' motions to quash. Although it is true that a disqualification motion cannot be filed after the challenged judge has made a determination "of contested fact issues relating to the merits" of the case (§ 170.6, subd. (2) [the fact that a judge has presided at "a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein"]), we do not agree with Plaintiffs' contention that Judge Bascue's ruling on the other defendants' motion to quash was a decision on the merits of the case.

When a nonresident defendant questions the trial court's in personam jurisdiction, the issue is tested by a special appearance in the form of a motion to quash service of summons (§ 418.10, subd. (a)). Although the defendant is the moving party and must present some admissible evidence (declarations or affidavits) to place the issue before the court (by showing the absence of minimum contacts with the state), the burden of proof is on the plaintiff to establish, by a preponderance of the evidence, a basis for jurisdiction (minimum contacts between the defendant and the forum state) and valid service of process in conformance with our service statutes. (*Ziller Electronics Lab GmbH* v. *Superior Court* (1988) 206 Cal.App.3d 1222, 1229, 1232-1233 [254 Cal.Rptr. 410]; *Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703, 710 [215 Cal.Rptr. 442].)

In the context before us, the question is whether the determination of a motion to quash involves a determination of contested fact issues related

to the merits of the case. Without a doubt, a motion to quash may involve the determination of contested facts related to the *jurisdictional issue*—as evidenced by the fact that a plaintiff may be given time to conduct discovery concerning the "contacts" issue before the trial court finally rules on the motion to quash. (*Ziller Electronics Lab GmbH v. Superior Court, supra*, 206 Cal.App.3d at p. 1234; Weil & Brown, Cal Practice Guide: Civil Procedure Before Trial 1 (The Rutter Group 1997) ¶ 3:386, p. 3-92, rev. #1, 1995.) More specifically, then, the question is whether the determination of the jurisdictional facts necessarily involves a determination of facts related to the merits of the case. Although it has not been considered in this context,[3] the issue has been addressed on appeals from orders granting and denying motions to quash, where it has been resolved against Plaintiffs' position. In *Nelson v. Horvath* (1970) 4 Cal.App.3d 1, 4 [84 Cal.Rptr. 101], an appeal attacking the sufficiency of an order denying a motion to quash service of process, we defined a motion to quash as a challenge to jurisdiction made without waiving the right to defend on the merits, and held that the motion " 'must be strictly limited to the point of no jurisdiction over the person of the moving party,' " so that an order vacating service puts an end to the litigation " 'without a judicial investigation of the merits' " of the action. In *Kroopf v. Guffey* (1986) 183 Cal.App.3d 1351, 1360 [228 Cal.Rptr. 807], an appeal from an order granting a motion to quash service of summons, Division Three of our court held that on a motion to quash the issue before the trial court and on review is "strictly limited to the question of jurisdiction over the defendant."

---

[3]Although three cases have skirted the issue, they have not addressed it. In *La Seigneurie U.S. Holdings, Inc. v. Superior Court, supra*, 29 Cal.App.4th 1500, the case was first assigned to Judge Krieger, who was timely disqualified by the plaintiff. On February 24, the defendant specially appeared by filing a motion to quash. On February 25, the case was assigned to Judge Sohigian for all purposes (but the defendant was not so notified until February 28). On March 15, Judge Sohigian granted the motion to quash (but in the interim the defendant had been re-served). On April 7, the defendant answered and, on the same date, filed a motion to disqualify Judge Sohigian. The motion was denied as untimely. (*Id.* at p. 1502.) The defendant's writ petition was granted on the ground that the motion to quash was a special appearance, extending the time for the challenge. (*Id.* at p. 1506.) The only issue decided was that, "while a party may disqualify a judge scheduled to hear his motion to quash service, he is not required to do so, and the time in which he *must* raise a section 170.6 challenge does not commence until his first general appearance." (*La Seigneurie U.S. Holdings, Inc. v. Superior Court, supra*, 29 Cal.App.4th at p. 1506.) The other two cases cited by Plaintiffs are inapposite for the same reason. (*Loftin v. Superior Court* (1971) 19 Cal.App.3d 577 [97 Cal.Rptr. 215] [defense motion for disqualification filed after defendant's motion to quash but before hearing thereon was timely because motion to quash was special appearance]; *Ziller Electronics Lab GmbH v. Superior Court, supra*, 206 Cal.App.3d 1222 [issue was whether prior successful motion to quash first service barred court from hearing motion to quash second service; held that it was not because first motion to quash was a *special appearance*].) These cases are not authority for issues not considered. (*People v. Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241].)

The result must be the same in this context. Most pretrial motions are decided without a determination of contested facts related to the merits of the case (*Kohn* v. *Superior Court* (1966) 239 Cal.App.2d 428, 431 [48 Cal.Rptr. 832] [motion to set aside an indictment]; *Hospital Council of Northern Cal.* v. *Superior Court* (1973) 30 Cal.App.3d 331, 337 [106 Cal.Rptr. 247] [motion for judgment on the pleadings]; *Los Angeles County Dept. of Pub. Social Services* v. *Superior Court* (1977) 69 Cal.App.3d 407, 417 [138 Cal.Rptr. 43] [motion for a continuance]; *People* v. *Hunter* (1977) 71 Cal.App.3d 634, 638 [139 Cal.Rptr. 560] [motion to amend an information]; *Bambula* v. *Superior Court* (1985) 174 Cal.App.3d 653, 657 [220 Cal.Rptr. 223] [motion for summary judgment]; *Landmark Holding Group, Inc.* v. *Superior Court* (1987) 193 Cal.App.3d 525, 528-529 [238 Cal.Rptr. 475] [ex parte application for a temporary restraining order]), and we can count on four fingers the number of pretrial motions that have been held to involve a determination related to the merits of the case (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 859-860 [182 Cal.Rptr. 146] [a motion to suppress a confession]; *Kohn* v. *Superior Court, supra,* 239 Cal.App.2d at p. 430 [a motion for a preliminary injunction]; *California Fed. Sav. & Loan Assn.* v. *Superior Court* (1987) 189 Cal.App.3d 267, 270-271 [234 Cal.Rptr. 413] [a motion for summary adjudication of a "make or break" issue], criticized in *Fight for the Rams* v. *Superior Court* (1996) 41 Cal.App.4th 953, 959-960 [48 Cal.Rptr.2d 851], and by Weil & Brown, Cal Practice Guide: Civil Procedure Before Trial 3 (The Rutter Group 1997) ¶ 9:137.3, p. 9(1)-71, rev. 1, 1997; *Conn* v. *Superior Court* (1987) 196 Cal.App.3d 774, 786 [242 Cal.Rptr. 148] [contempt]).

To bring themselves within the latter group, Plaintiffs contend the motion to quash involved a "make or break" issue because it "afforded all of the defendants a full preview of Judge Bascue's thinking on a critical merits issue in this case." Whatever truth there may be to that assertion, we decline Plaintiffs' invitation to follow *California Fed. Sav. & Loan Assn.* v. *Superior Court, supra,* 189 Cal.App.3d 267, and instead conclude that a motion to quash, like most pretrial motions made in civil cases, does not involve a determination of facts related to the merits of the case. (*Fight for the Rams* v. *Superior Court, supra,* 41 Cal.App.4th at p. 958; see also Weil & Brown, Cal Practice Guide: Civil Procedure Before Trial 3, *supra,* ¶ 9:137.3, p. 9(1)-71.) However important an issue may be to the outcome of a case, it is not a bar to a disqualification motion unless it requires resolution of "contested fact issues relating to the merits" of the case. (§ 170.6, subd. (2).) While a motion to quash service of summons on the ground that the court lacks in personam jurisdiction may and probably will involve a determination of contested facts concerning the extent of the defendant's contacts with California (*Ziller Electronics Lab GmbH* v. *Superior Court, supra,* 206 Cal.App.3d at p. 1233),

the motion does not require a determination of contested facts related to the merits of the case.[4]

For these reasons, we reject Plaintiffs' contention that Judge Bascue's ruling on the motion to quash was a prior determination of a contested fact issue relating to the merits of the case.

### C.

■ Plaintiffs contend Okaloosa's disqualification motion was untimely because only one such motion is allowed per "side" and the time within which Okaloosa's "side" could exercise its disqualification option had expired long before Okaloosa entered the case. While we agree that only one peremptory challenge is allowed for each side (§ 170.6, subd. (3) [in actions where there is more than one plaintiff or more than one defendant, "only one motion for each side may be made in any one action"]), we do not agree that Okaloosa's motion was untimely.

To accept Plaintiffs' reliance on the one-per-side provision in subdivision (3) of section 170.6, we would have to ignore the provision in subdivision (2) of section 170.6 that extends the time for newly added defendants ("if the party has not yet appeared in the action, then [the challenge must be made] within 10 days after the appearance"). This construction fails for the simple reason that it ignores our mandate to construe a statute to give effect to all of its parts (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]), particularly where (as here) both parts *can* be given effect by a rule that conforms to the clear Legislative intent, and it is this: Where, as here, no other defendant has exercised its right to disqualify a judge, a late-appearing defendant may do so within 10 days after its appearance. (§ 170.6, subds. (2), (3).) But where another defendant on the

---

[4] In all of the cases deciding whether a particular motion is one requiring a determination of contested facts related to the merits of the case (those cited in this section, except *California Fed.*), the courts have looked to the particular motions in general terms, not in the context of the allegations in the case then before the court. In other words, the courts have not considered whether a motion for summary judgment in a tort case should be viewed differently than the same motion in a breach of contract case, or whether an application for a TRO in a nuisance case should be viewed differently than the same application in a trade secrets case. Instead, the courts have recognized the need for uniformity, presumably to permit litigants, lawyers and judges to proceed with some certainty. We do the same in this case, and thus do not consider whether there is anything unusual about the allegations of Plaintiffs' complaint (Plaintiffs do not suggest there is anything out of the ordinary, only that jurisdiction is a critically important issue).

same "side"[5] *has* exercised its right to disqualify a judge, the late-appearing defendant has no right to challenge the then-current judge because that side has used its one challenge. (§ 170.6, subds. (2), (3); Weil & Brown, Cal Practice Guide: Civil Procedure Before Trial 3, *supra*, ¶ 9:139, p. 9(1)-72 [a challenge by one of several coparties bars any later challenge to a different judge by any of the other coparties, and this "is apparently true even as to coparties *joined after* the . . . challenge"].)

## D.

Plaintiffs contend the rules governing "coordination cases" should be applied to cases designated "complex litigation." We disagree.

"Coordination cases" are governed by a statutory scheme (§ 404 et seq.) providing for the coordination of "civil actions sharing a common question of fact or law" that are *"pending in different courts,"* where the circumstances are such that an assignment of one judge to hear all of the cases will promote the ends of justice. (§§ 404, 404.1, italics added.) When a party or the court in which one of the actions is pending believes that one or more actions should be coordinated, a request for coordination is made to the Chairperson of the Judicial Council to assign a judge to determine whether, in fact, coordination is appropriate. (§ 404.) Once the initial decision to coordinate is made and a coordination judge is assigned, other cases may be added on with the approval of the assigned judge. (§ 404.4.) As is apparent, this is a complex and time consuming process, which is why the Judicial Council, as permitted by statute (§ 404.7), has extended the time for filing a disqualification motion to 20 days after *service* of the coordination order. (Cal. Rules of Court, rule 1515; *Farmers Ins. Exchange* v. *Superior Court* (1992) 10 Cal.App.4th 1509, 1511 [13 Cal.Rptr.2d 449] [the coordination order provides a new time window for challenges, notwithstanding that the assigned judge may have already decided contested issues common to all coordinated cases]; see also *Citicorp North America, Inc.* v. *Superior Court* (1989) 213 Cal.App.3d 563, 571 [261 Cal.Rptr. 668] [because the time limit runs from "service," section 1013 extends the time for service by mail].)

Plaintiffs ignore these special rules and simply contend we should apply the disqualification rules developed for coordinated cases to those designated "complex" under the local rules. (*Industrial Indemnity Co.* v. *Superior*

---

[5]Although most cases have only two sides, "there may be more if codefendants have substantially adverse interests." (*Pappa* v. *Superior Court* (1960) 54 Cal.2d 350, 354 [5 Cal.Rptr. 703, 353 P.2d 311].) Since none of the defendants (and none of the plaintiffs) have exercised a peremptory challenge in this case, we need not (and do not) determine whether any of the defendants' interests are substantially adverse to Okaloosa's interests or to each other.

*Court* (1989) 214 Cal.App.3d 259, 263 [262 Cal.Rptr. 544] ["the authority given to the Judicial Council over coordinated actions is broad enough to empower the Judicial Council to exclude parties from the right to exercise a section 170.6 challenge" when a new party is brought in more than 20 days after service of the order assigning the coordination judge].) We cannot do that for the simple reason that the rules developed for coordinated cases do not apply to litigation labeled "complex" under local rules or to *anything* other than "coordinated actions" in the statutory sense of those words. (§ 404.7 [authorizing the Judicial Council to provide by rule the practice and procedure for coordination of civil actions]; Cal. Rules of Court, rule 1515.)[6]

Accordingly, the fact that a newly added party who in ordinary litigation (complex or otherwise) would have the right to file a disqualification motion may be deprived of that right in coordinated cases does not affect our decision in this case. (See *Industrial Indemnity Co. v. Superior Court, supra,* 214 Cal.App.3d at pp. 263-264.)

E.

In the trial court, Plaintiffs contended that Okaloosa's disqualification motion was made in bad faith and ought to be denied on that ground alone. Although the issue has not been the focus of the parties' attention in these writ proceedings, it deserves some comment.

In *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 197 [137 Cal.Rptr. 460, 561 P.2d 1148], our Supreme Court reaffirmed the continuing validity of section 170.6, rejecting a list of horribles paraded by to show the problems created by misuses of section 170.6 on the ground that the statute requires the party or his attorney to show "good faith" by declaring under oath that the judge is prejudiced. (§ 170.6, subd. (2) [the disqualification motion must be supported by an "affidavit or declaration under penalty of perjury or an oral statement under oath that the judge . . . is prejudiced . . . ."]; see also *McCartney v. Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 538, fn. 13 [116 Cal.Rptr. 260, 526 P.2d 268] ["the objective

---

[6]In *La Seigneurie U.S. Holdings, Inc. v. Superior Court, supra,* 29 Cal.App.4th at page 1504, Division Two of our court questioned the logic of the Legislature's failure to adopt special disqualification rules for cases subject to trial delay reduction programs, noting that the "principal purpose of assigning a judge to a case for all purposes is to ' "expedite complex matters by permitting *one judge to handle the entire matter from start to finish, acquiring an expertise regarding the factual and legal issues involved which will expedite the process."* ' " As the court pointed out, however, the broad policy consideration behind the enactment of the trial delay reduction act—reduction of litigation delays—did not cause the Legislature to adjust the disqualification procedure to prevent later disruptions caused by a reassignment to another judge. (*Id.* at p. 1504.) We agree with Division Two that this is a matter to be addressed, if at all, by the Legislature, not the courts.

of a verification [to a section 170.6 affidavit] is to insure good faith in the averments"], disapproved on other grounds in *Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 799, fn. 18 [119 Cal.Rptr. 841, 532 P.2d 1209].) While it would seem to follow that a showing of *bad faith* would invalidate the disqualification motion, we have been unable to find a case (real or hypothesized) that would support such a conclusion. (See *La Seigneurie U.S. Holdings, Inc.* v. *Superior Court, supra,* 29 Cal.App.4th at p. 1505 ["even if the court suspects that the party has abused its right to utilize section 170.6," the motion (if timely) must be granted]; *People* v. *Superior Court (Williams)* (1992) 8 Cal.App.4th 688, 699 [10 Cal.Rptr.2d 873] [where the charge is made that a peremptory challenge has been used to disqualify a Black judge on the basis of race, the trial court may not ask the moving party to explain himself because a good faith "belief" that the trial judge is prejudiced against the party or his attorney is sufficient].)

It follows that our views concerning Okaloosa's good faith (or the good faith of its lawyer) are irrelevant. Okaloosa's disqualification motion was timely and it had to be granted without regard to the disruption it may have caused in the orderly administration of this litigation. Like it or not (and we confess that we don't), our conclusion is mandated by section 170.6.

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court (1) to vacate its order denying Okaloosa's disqualification motion, and (2) to enter a new order granting the motion and transferring this case to the presiding judge for reassignment to another judge. The temporary stay heretofore issued shall remain in effect until remittitur issues and then be dissolved without further order from us. The parties are to pay their own costs of these writ proceedings.

Ortega, Acting P. J., and Masterson, J., concurred.