ARONSON, J.,
Concurring.—As an intermediate appellate court we must follow Supreme Court precedent. This axiom is often misunderstood by the general public, which may assume we are free to decide each case based on our innate sense of what is “right” or what we believe the law should be. In reality, the outcome of many appeals depends on whether an earlier Supreme Court decision covers the matter before us or fairly may be distinguished. Because I conclude the Supreme Court’s opinion in Solberg v. Superior Court (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148] (Solberg) resolves the issues raised here, I join Justice O’Leary’s opinion that Solberg compels us to grant the petition by the People of the State of California (petitioner) for a peremptory writ of mandate directing respondent Superior Court of Orange County (respondent court) to vacate its order denying petitioner’s disqualification motion under Code of Civil Procedure section 170.6.[1]
Respondent court denied petitioner’s section 170.6 motion because it concluded the motion was part of the Orange County District Attorney’s (district attorney) coordinated campaign to “blanket paper” Judge Thomas Goethals to prevent him from hearing murder trials in retaliation for Judge Goethals’s rulings in three earlier murder cases. As described more fully in both the majority and dissenting opinions, Judge Goethals found the district attorney’s office repeatedly engaged in misconduct in violation of the defendants’ constitutional rights, and in one of the cases he found the misconduct created a conflict of interest requiring the office’s recusal. Respondent court found the campaign to prevent Judge Goethals from hearing long cause murder trials substantially interfered with the court’s ability to administer criminal justice in Orange County, and thereby violated the separation of powers doctrine.
In Solberg, however, the Supreme Court concluded blanket papering does not constitute a violation of the separation of powers doctrine even if the widespread misuse of section 170.6 prevents a judge from hearing all or certain types of cases. (Solberg, supra, 19 Cal.3d at pp. 201-204.) In particular, Solberg established the validity of section 170.6 “as applied ... in a criminal context,” despite the fact that institutional parties like the district attorney or public defender may engage in blanket papering. (Solberg, at p. 187.)
*912 Although I reach a different result, I agree with several observations Justice Thompson makes in his dissent. For example, I agree Solberg did not inoculate section 170.6 against all conceivable separation of powers challenges, but rather left room for future as applied challenges. The nature of every as applied challenge is that it must be evaluated on its own merits. I also agree substantial evidence supports respondent court’s conclusion the district attorney engaged in blanket papering of Judge Goethals and did so to retaliate and punish a widely respected and experienced jurist whom the district attorney had previously accepted on a routine basis. Nonetheless, I cannot agree with the dissent’s conclusion Solberg does not control the outcome here.
The dissent views Solberg as dealing only with a facial challenge to section 170.6, but acknowledges “[e]ven if Solberg implied section 170.6 was constitutional as applied to the facts of that case, it is only binding precedent with reference to those facts.” (Dis. opn., post, at p. 926, fn. 2.) The dissent also distinguishes the “character and magnitude” of the blanket challenges here from the four challenges lodged in Solberg. (Dis. opn., post, at pp. 929-931.) I read Solberg differently. Solberg found that a quantitative difference in the number of challenges did not violate the separation of powers doctrine, and its broad discussion of blanket challenges shows the Supreme Court did not intend to limit the precedential value of its decision to cases involving few challenges. Solberg acknowledged blanket challenges by the district attorney or public defender might “force” the judge’s removal from the criminal bench, presumably because the number of challenges would interfere with the court’s operations by diverting more cases to other judges (Solberg, supra, 19 Cal.3d at p. 202), but Solberg concluded this posed no separation of powers violation because reassignment did not deprive the court of the power to hear the case (id. at p. 202, fn. 22). Nor did Solberg see blanket challenges as a threat to judicial independence, even if “invoked to intimidate judges generally” or used “to influence the outcome of judicial election campaigns.” (Id. at p. 195.)
In sum, Justice Thompson’s analysis may have formed the basis for our decision if we were writing on a clean slate. Solberg, however, anticipated the circumstances we face in this case and found that blanket challenges under section 170.6 did not violate the separation of powers doctrine.[2] As explained in the majority opinion, Solberg is binding on this court, and therefore compels us *913 to grant the petition because respondent court abused its discretion in failing to follow Solberg’s dictates. (See People v. Superior Court (Brim) (2011) 193 Cal.App.4th 989, 991 [122 Cal.Rptr.3d 625] [“Failure to follow the applicable law is an abuse of discretion”].)
Not only do I agree with Justice O’Leary’s conclusion Solberg compels us to grant the petition, I also agree with her criticism of Solberg’s analysis. I write separately to discuss my further reservations about Solberg’s reasoning. Because Solberg defined blanket challenges as nothing more than “ ‘bad faith claims of prejudice’ ” under section 170.6, I question how Solberg nevertheless could conclude blanket papering by a district attorney passes constitutional muster. (Solberg, supra, 19 Cal.3d at p. 203.) Not only is Solberg internally inconsistent in ratifying bad faith prejudice claims barred by section 170.6, it also conflicts with the Supreme Court’s earlier jurisprudence on the constitutionality of statutes allowing peremptory challenges to individual judges. Based on the district attorney’s use of blanket papering in this case and similar tactics in other jurisdictions, this may be an opportune time for the Supreme Court to clarify the constitutional analysis in evaluating whether institutionalized blanket challenges violate the separation of powers doctrine.

The Predecessor Statute and the Court’s Earlier Judicial Disqualification Decisions

California law long has allowed a party to disqualify the judge assigned to hear a case based on an evidentiary showing and independent judicial determination of bias, prejudice, interest, or other disqualifying characteristic. (Johnson v. Superior Court (1958) 50 Cal.2d 693, 696-697 [329 P.2d 5] (Johnson); Austin v. Lambert (1938) 11 Cal.2d 73, 75-76 [77 P.2d 849] (Austin).) In 1937, however, the California Legislature enacted former section 170.5 allowing a party to remove a judge from a case without establishing a disqualifying characteristic or an independent judicial determination. Section 170.5 required the presiding judge to assign a new judge to hear a case when *914 a litigant simply filed a written “peremptory challenge” to the assigned judge. The statute did not require the litigant to state the ground for his or her challenge or to declare under oath that any disqualifying characteristic existed. (Austin, at pp. 74-75.) As Austin noted, “Nothing is said in the new section about bias, prejudice, interest or any other recognized ground for disqualification.” (Id. at p. 76.)
In Austin, the Supreme Court held former section 170.5 unconstitutional as an “unwarranted and unlawful interference with the constitutional and orderly processes of the courts” because it made “the exercise of judicial power, duty and responsibility subject to the whim and caprice of a lawyer or litigant.” (Austin, supra, 11 Cal.2d at pp. 79, 76.) Although it acknowledged the Legislature’s authority to establish reasonable regulations concerning the disqualification of a judge (id. at pp. 75-76), the Supreme Court nonetheless explained that placing “in the hands of a litigant uncontrolled power to dislodge without reason or for an undisclosed reason, an admittedly qualified judge from the trial of a case in which forsooth the only real objection to him might be that he would be fair and impartial in the trial of the case would be to characterize the statute not as a regulation but as a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department” (id. at p. 79). The court explained this crossed constitutional boundaries because a judge takes an oath to discharge the duties of his office, including the obligation to “determine causes presented to him.” (Id. at p. 75.) A judge must discharge that duty absent “good cause.” (Ibid.)
Austin recognized that several other states had upheld the constitutionality of statutes that allowed a “so-called ‘peremptory challenge’ ” to a judge, but it distinguished those statutes on the ground they uniformly required the party to file a declaration under oath asserting the judge was biased or prejudiced against the party, even though many of the statutes did not allow judicial inquiry into the basis for that assertion. (Austin, supra, 11 Cal.2d at p. 76.) As the Supreme Court explained, “Such an ex parte proceeding has been upheld on the ground that the charge of bias or prejudice under oath is at least an imputation of such disqualification sufficient to save the statute from successful attack on constitutional grounds.” (Id. at p. 76.)
Nearly 20 years later, the California Legislature enacted section 170.6 modeled after the statutes from other states discussed in Austin. (Solberg, supra, 19 Cal.3d at p. 195.) As originally enacted, section 170.6 only applied to civil actions, but otherwise allowed a party to disqualify a judge in the same manner as the current statute—by filing a declaration under oath asserting the “ ‘party or attorney cannot or believes that he cannot have a fair and impartial trial or hearing before such judge.’ ” (Johnson, supra, 50 Cal.2d at p. 701; see id. at pp. 695-696.)
*915 Just a year after the statute’s enactment, the Supreme Court upheld the facial constitutionality of section 170.6, rejecting a claim the statute violated the separation of powers doctrine and impermissibly interfered with core judicial functions by allowing a litigant or attorney to disqualify a judge for prejudice without requiring a statement identifying the reasons the litigant or attorney believed the judge was prejudiced, without proof of prejudice, and without a judicial determination of the judge’s prejudice. (Johnson, supra, 50 Cal.2d at pp. 695-696.) Johnson explained the Legislature has the authority to establish reasonable regulations concerning judicial disqualification, and bias or prejudice long has been a recognized ground for disqualification. Johnson also concluded section 170.6 established a permissible means of disqualifying a judge for prejudice, explaining the Legislature’s decision to give litigants an opportunity to disqualify a judge solely based on a sworn statement professing the litigant’s belief in the judge’s prejudice was necessary to ensure confidence in the judiciary and avoid the suspicion that might arise in cases where it may be difficult or impossible for the litigant to establish actual prejudice to the satisfaction of a judicial body. (Johnson, at p. 697.)
Because section 170.6 does not require proof of prejudice, the Supreme Court recognized a litigant may abuse the statute by disqualifying a judge to obtain a perceived litigation benefit, such as a trial continuance while a new judge is assigned or the assignment of a new judge the litigant believes may be more favorable. Johnson concluded this potential for abuse did not render the statute unconstitutional because the Legislature determined the statute’s benefits outweighed the potential problems caused by these abuses, and the Legislature also included several safeguards in the statute to minimize its abuse, including a requirement the party or its attorney show good faith by declaring under oath that the judge is prejudiced.[3] The Supreme Court found this good faith requirement to be an effective safeguard because the court could not “assume that there will be a wholesale making of false statements under oath.” (Johnson, supra, 50 Cal.2d at p. 697.) Later, the Supreme Court explained Johnson “relied heavily” on these statutory safeguards in upholding section 170.6’s constitutionality. (McClenny v. Superior Court (1964) 60 Cal.2d 677, 685-686 [36 Cal.Rptr. 459, 388 P.2d 691].)
One year after Johnson, the Legislature amended the statute so that it also would apply to criminal actions. (See Solberg, supra, 19 Cal.3d at p. 201, fn. 20.)

*916
Solberg’s Analysis of Section 170.6

In Solberg, the Supreme Court revisited section 170.6’s constitutionality, and again affirmed the statute’s validity. (Solberg, supra, 19 Cal.3d at p. 187.) As in Johnson, the court concluded section 170.6 did not violate the separation of powers doctrine or impair the judiciary’s independence because the statute and the declaration procedure it established was a reasonable exercise of the Legislature’s authority to regulate the disqualification of judges. Solberg emphasized the declaration under section 170.6 did not establish actual prejudice, nor was actual prejudice required to disqualify a judge under the statute. Rather, section 170.6 merely required the litigant to hold a good faith belief in the judge’s prejudice, and the good faith of that belief was established by the litigant declaring the belief under oath. (Solberg, at p. 193; id. at p. 200 [“we have repeatedly held that the [section 170.6] motion . . . ‘requires a good faith belief in the judge’s prejudice,’ ” and that good faith is established by declaring that belief under oath because “ ‘the objective of a verification is to insure good faith in the averments of a party’ ”].)
Solberg also considered the courts’ experience with section 170.6 during the two decades following Johnson to determine whether the statute’s actual operation rendered it unconstitutional as applied based on various abuses. (Solberg, supra, 19 Cal.3d at p. 194.) The Supreme Court acknowledged this experience revealed litigants had invoked section 170.6 for a wide variety of reasons other than disqualifying a judge they believed was prejudiced, including removing a judge solely based on the judge’s views on the law, delaying a hearing or trial, changing venue, obtaining a less experienced judge, intimidating judges, and even influencing judicial election campaigns. The court also acknowledged these abuses impacted the operation of California’s trial courts as they rescheduled and reassigned cases to accommodate the parties’ right to have a new judge assigned. (Solberg, at pp. 194-195.)
Nonetheless, Solberg concluded the impact of these abuses on the courts did not render section 170.6 unconstitutional as applied for two reasons. First, the Supreme Court was aware of these abuses when it first upheld the statute’s constitutionality in Johnson, and the experience with section 170.6 in the decades following Johnson merely “added quantitatively but not qualitatively to [the court’s] understanding of the problem.” (Solberg, supra, 19 Cal.3d at p. 196.) As the court had explained in Johnson, the Legislature considered these potential abuses of the statute when it enacted section 170.6 and concluded the statute’s benefits outweighed the potential problems these abuses posed to the courts. Second, as Johnson also explained, the Legislature included safeguards in section 170.6 to minimize these abuses, including requiring the litigant or attorney to show good faith by declaring under oath *917 that the judge is prejudiced. (Solberg, at pp. 196-197.) The Supreme Court again observed it would not “ ‘assume that there will be a wholesale making of false statements under oath.’ ” (Id. at p. 197.)
Of particular relevance to this case, Solberg also considered the constitutionality of section 170.6 as applied in a criminal context and an abuse of the statute unique to criminal cases: the “ ‘blanket challenge.’ ” (Solberg, supra, 19 Cal.3d at p. 202.) As defined by Solberg, a blanket challenge “occurs when as a matter of office policy a district attorney or a public defender instructs his deputies to disqualify a certain disfavored judge in all criminal cases of a particular nature—such as those involving prostitution or illegal narcotics—or in all criminal cases to which he is assigned.” (Ibid.) Because the district attorney is the counsel for the plaintiff in all criminal cases and the public defender is the counsel for the defendant in many criminal cases, a blanket challenge can have a much broader impact than other potential abuses under section 170.6 by preventing a judge from hearing any cases of a certain type or even causing the judge’s removal from the criminal bench if the district attorney or public defender challenges the judge in nearly every case. (Solberg, at pp. 201-202.)
Quoting from an earlier judicial misconduct case involving a judge’s intemperate reaction to the public defender’s policy challenging the judge in every case, Solberg explained a blanket challenge lacks the good faith belief in prejudice that section 170.6 requires in each individual case: “ ‘The “blanket” nature of the written directive issued by the public defender arguably contravened this requirement of good faith by withdrawing from each deputy the individual decision whether or not to appear before [Judge McCartney]. To phrase it another way, the office policy predetermined that prejudice would be claimed by each deputy without regard to the facts in each case handled by the office, thereby transforming the representations in each affidavit into bad faith claims of prejudice.’ ” (Solberg, supra, 19 Cal.3d at p. 203, quoting McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512, 538, fn. 13 [116 Cal.Rptr. 260, 526 P.2d 268], disapproved on other grounds in Spruance v. Commission on Judicial Qualifications (1975) 13 Cal.3d 778, 799, fn. 18 [119 Cal.Rptr. 841, 532 P.2d 1209].)
Although Solberg recognized entirely removing a judge from the criminal bench was a “radical consequence” of a blanket challenge, the court concluded the impact of a blanket challenge “is different not in kind but only in degree” from the abuses considered in Johnson, “and that difference does not warrant a contrary result.” (Solberg, supra, 19 Cal.3d at p. 202 & fn. 22.) The Supreme Court condemned blanket challenges, but nonetheless concluded that abuse of section 170.6 did not “vitiate[] the statute” because “ ‘the Legislature clearly foresaw that the peremptory challenge procedure would be *918 open to such abuses but intended that the affidavits be honored notwithstanding misuse. [Citation.]’ In short, the possibility of the filing of ‘blanket challenges’ does not distinguish the present criminal proceeding from Johnson, and the reasoning of that decision is equally applicable to the current version of the statute, governing both civil and criminal cases.” (Solberg, at pp. 203-204, fn. omitted.)
Finally, Solberg suggested that the potential for misuse of section 170.6 in the criminal context was limited by the nature of the district attorney’s and public defender’s practice. Because the district attorney’s and public defender’s entire practice is concentrated before the same criminal judges, they must “realize that ... if [they or their] deputies file unwarranted ‘blanket challenges’ against a particular judge the effect may well be to antagonize the remaining judges of the court, one of whom will be assigned to replace their unseated colleague, and the presiding judge, who will make that assignment.”[4] (Solberg, supra, 19 Cal.3d at p. 202.)

Solberg’s Inconsistencies

Solberg concluded there was no meaningful distinction between the abuses of section 170.6 considered in Johnson and the abuse created by institutionalized blanket challenges in criminal cases, and therefore Johnson’s analysis regarding section 170.6’s constitutionality compelled the conclusion the statute also was constitutional as applied to a blanket challenge. (Solberg, supra, 19 Cal.3d at p. 202.) The court’s earlier analysis in Johnson and Solberg’s definition of a blanket challenge as a bad faith claim of prejudice appear at odds with Solberg’s conclusion that blanket challenges in criminal cases do not violate the doctrine of separation of powers.
As explained above, Johnson and Solberg found section 170.6 constitutional because the Legislature may establish reasonable regulations concerning the disqualification of judges, prejudice or bias is a permissible ground for disqualifying a judge, and section 170.6 establishes a reasonable procedure for disqualifying a judge based on prejudice because the statute requires the litigant or attorney to show a good faith belief in the judge’s prejudice by stating that belief under oath. (Solberg, supra, 19 Cal.3d at pp. 191-193.)
In Austin, the Supreme Court found the predecessor to section 170.6 unconstitutional because it allowed a party to disqualify a judge without *919 specifying a recognized basis for disqualification or making a showing of any kind. (Austin, supra, 11 Cal.2d at pp. 75-76, 79.) Providing the Legislature with a roadmap to the elements of a constitutional statute, the Austin court explained that peremptory disqualification statutes in other states survived constitutional attack because requiring the party to allege bias or prejudice under oath at least imputed a recognized and well-accepted ground for disqualification. (Id. at pp. 76-78.)
Solberg defined a blanket challenge as a bad faith claim of prejudice because the claim is made based on a general policy determination by the district attorney or public defender rather than a good faith belief the judge is prejudiced in any particular case.[5] (Solberg, supra, 19 Cal.3d at p. 203.) Under that definition, a blanket challenge to a judge lacks the good faith belief required by section 170.6 and the statute is unconstitutional as applied to that challenge. (See School Dist. of Okaloosa County v. Superior Court (1997) 58 Cal.App.4th 1126, 1136-1137 [68 Cal.Rptr.2d 612] [Solberg’s analysis suggests showing of bad faith invalidates § 170.6 motion].) Indeed, if a section 170.6 challenge is made in bad faith, then the statute as applied to that challenge is no different than the statute Austin found unconstitutional because the statute permits a litigant or attorney to disqualify an otherwise qualified judge for a reason other than the judge’s bias, the only statutorily recognized ground for disqualification. (See Austin, supra, 11 Cal.2d at p. 79; Autoland, Inc. v. Superior Court (1988) 205 Cal.App.3d 857, 861-862 [252 Cal.Rptr. 662] [§ 170.6 “is nothing more nor less than the old unconstitutional statute recycled with an empty pretension of a sworn statement”].) Nonetheless, current law requires a court to accept an affidavit of prejudice under section 170.6 even if the attorney lodging the challenge admits to the court the filing is a sham. (See School Dist. of Okaloosa County, at pp. 1136-1137.)
Moreover, in both Solberg and Johnson, the Supreme Court rejected the challenges to section 170.6 based on the many forms of abuse other than a blanket challenge by stating the court would not assume “ ‘there will be a *920 wholesale making of false statements under oath.’ ”[6] (Solberg, supra, 19 Cal.3d at p. 197; see Johnson, supra, 50 Cal.2d at p. 697.) But under Solberg’s definition of a blanket challenge, the wholesale making of false statements under oath occurs by definition.

Conclusion

The statutory scheme under section 170.6 prohibits a trial court from exploring the reasons a party filed a challenge to a particular judge. A court must accept the challenge, even if the court harbors a reasonable suspicion a party misused the procedure for an impermissible reason. (Solberg, supra, 19 Cal.3d at p. 198.) As Solberg explains, sound reasons support the Legislature’s decision to prohibit hearings based on suspicion alone. (Id. at pp. 198-200.) But where substantial evidence, rather than reasonable suspicion, exists showing bad faith blanket challenges by the district attorney or public defender, a limited inquiry nonetheless may be warranted. I believe the important issues raised by this case deserve further scrutiny by the Supreme Court, the Legislature, or both.

 All statutory references are to the Code of Civil Procedure.f

 The dissent and respondent court distinguish Solberg on the ground it involved a separation of powers conflict between the legislative and judicial branches of government, but the district attorney’s blanket use of section 170.6 in this case involves a conflict between the executive and judicial branches. I disagree.
Respondent court does not challenge the district attorney’s use or exercise of any executive power. Rather, the power or right at issue is one the Legislature created and delegated not only to the district attorney, but to all litigants and attorneys in any civil or criminal action. Absent section 170.6, the district attorney has no inherent executive right or power to *913 disqualify a judge based solely on a suspicion the judge would be biased. It is the express terms of the statute that create the potential for undermining court functions.
Respondent court concluded the unconstitutional interference with its powers arose from the scope and basis for the district attorney’s challenges, not from the fact that it was the district attorney making the challenges. Although the public defender is not a member of the executive branch, it too potentially could interfere with the court’s powers in the same manner by lodging blanket challenges to a particular judge. Indeed, even a single law firm specializing in an area of civil law potentially could interfere with the court’s powers by exercising a blanket challenge to the only judge hearing cases involving that area of the law.
The separation of powers conflict at issue therefore arises between the legislative and judicial branches. Nonetheless, regardless how one views the separation of powers conflict, Solberg anticipated the circumstances presented in the present case and found blanket challenges by a district attorney would not create a separation of powers violation.

 Other safeguards in section 170.6 include limiting each side in a case to one challenge, placing strict time limits on when to assert a challenge, limiting continuances based upon a request to disqualify a judge, and requiring prompt assignment of a new judge. (Johnson, supra, 50 Cal.2d at p. 697.)

 I share Justice O’Leary’s concern about the court’s conclusion that wholesale misuse of section 170.6 would not occur because of the threat judges would retaliate against any attorney or office that misuses the statute. The constitutionality of a statute designed to minimize even the appearance of bias or prejudice cannot turn on the willingness of judges to violate their' ethical duty to act impartially.

 The Supreme Court’s imputation of bad faith to blanket challenges may be overinclusive because under certain circumstances a blanket challenge to a judge could be brought in good faith if the district attorney or public defender reasonably believes the challenged judge is prejudiced against the entire office. That is not the case here, however. As explained above, substantial evidence supports respondent court’s finding that the district attorney asserted its blanket challenge to Judge Goethals in retaliation for his legal conclusion in earlier cases that the district attorney had engaged in misconduct or prosecutorial error under Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] and Massiah v. United States (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], Before those rulings, the district attorney routinely accepted Judge Goethals without question.

 Solberg and Johnson also rejected the argument that the various abuses of section 170.6 unconstitutionally disrupted court operations, explaining the Legislature considered the abuses and associated problems in enacting the statute and concluded the statute’s benefits outweighed those problems. (Solberg. supra. 19 Cal.3d at pp. 196, 203-204; Johnson, supra. 50 Cal.2d at p. 697.) Whether the Legislature considered these abuses and problems, however, should not be the governing standard for evaluating a separation of powers challenge. Rather, as Solberg recognizes, the appropriate inquiry is whether the statute on its face or in its application substantially impairs the constitutional powers of the courts or practically defeats their' exercise. (Solberg. at p. 192.)