Filed 2/7/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SUNRISE FINANCIAL, LLC, et al., | D073772 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. 37-2013-00078078-CU-BT-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| OVERLAND DIRECT, INC., et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDINGS in mandate after the superior court denied a peremptory challenge as untimely. Joel Wohlfeil, Judge. Petition denied.

The Leichter Firm, Kevin J. Leichter and Andrew E. Hewitt for Petitioners.

No appearance for Respondent.

Blanchard, Krasner & French, Kipp Williams and John F. Whittemore for Real Parties in Interest.

In August 2017, San Diego County Superior Court Judge Joel Wohlfeil was assigned as the independent calendar judge to preside over a case brought by Overland Direct, Inc., and CTPC, LLC (collectively Overland) alleging defendants fraudulently induced Overland to assign security interests in various properties to certain defendants. In January 2018, Overland moved to transfer and consolidate its other cases involving similar fraud allegations, including one from the San Bernardino County Superior Court and one from the Los Angeles County Superior Court. (Code Civ. Proc., § 403; Cal. Rules of Court, rule 3.500.)[1] Some defendants in the San Bernardino and Los Angeles cases were not already part of the San Diego County action, as they were third-party purchasers of properties located in these other counties. Over written opposition by these defendants, Judge Wohlfeil granted the transfer motion and ordered the San Bernardino and Los Angeles cases transferred to San Diego County Superior Court and consolidated with Overland's existing San Diego case.

Three of the defendants in the San Bernardino action (referred to as the Sunrise defendants)[2] then brought a section 170.6 challenge against Judge Wohlfeil. The court denied the challenge as untimely because the motion was filed more than 15 days after the Sunrise defendants appeared in the action by filing their opposition to Overland's section 403 transfer/consolidation motion.

---

[1]     All statutory references are to the Code of Civil Procedure. All rule references are to the California Rules of Court.

[2]     These defendants are Sunrise Financial, LLC; Nice Team, LLC; and E & E Mortgage Bankers Corp.

The Sunrise defendants filed a writ petition challenging the denial of their section 170.6 motion. After staying the San Diego County Superior Court proceedings, we issued an order to show cause because section 170.6 rulings are not appealable and there did not appear to be any published authority on the precise issue. We then granted the parties' request that we defer ruling on the writ petition pending the resolution of various bankruptcy issues. After the bankruptcy issues were resolved, the parties completed their briefing on the section 170.6 issues and we conducted oral argument.

Based on our evaluation of the parties' arguments, the record, and the applicable law, we conclude the court properly found the Sunrise defendants' section 170.6 challenge was untimely because defendants filed the challenge more than 15 days after they made an appearance in the action by filing an opposition to the section 403 transfer/consolidation motion in Judge Wohlfeil's department. In reaching this conclusion, we are aware that section 170.6's time deadlines were not written with section 403 transfer motions in mind, and there are several plausible ways to interpret section 170.6 in this context. But we are satisfied our conclusion best effectuates the legislative intent when viewing the specific words of the statute and the statutory purpose and objectives.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In 2007, Overland obtained $25 million in borrowed funds from certain lenders. Overland then used the funds to make secured real estate loans involving many different parcels of property located in several different counties. In about 2010, Overland allegedly defaulted on the $25 million debt obligation. The lenders hired Dan Tepper and his entity Esola Capital Investment, LLC (Esola) to evaluate the situation and perform an audit on the secured properties. Tepper then allegedly mispresented to Overland that the debt would be extinguished if Overland transferred its interests in the secured properties to Esola.

Overland agreed to do so and executed a series of recordable documents purportedly transferring its interest in these properties to Esola in trust for the lenders. These properties included: (1) property in San Diego County (the Cartwright property); (2) property in San Bernardino County (the Euclid property); and (3) property in Los Angeles County (the Friar property). Esola/Tepper then allegedly conducted foreclosure sales of these properties, and the properties were purchased by, or transferred to, various third parties. These third parties include the Sunrise defendants (who obtained interests in the San Bernardino Euclid property).

In December 2013, Overland filed their San Diego County complaint alleging intentional and negligent misrepresentation against Tepper and Esola (and one other

---

[3]    This case has a complicated litigation history. We summarize only those alleged facts relevant to our consideration of the legal issue before us.

4

defendant) pertaining to the Cartwright property. As later amended, Overland also sought to cancel instruments as to third parties who claimed interests in the property through Tepper/Esola.

Three years later, in June 2016, Overland filed the San Bernardino County Superior Court action, asserting similar fraud allegations against Tepper and Esola, and seeking to quiet title to the Euclid property against the Sunrise defendants and others. Overland also filed a Los Angeles County Superior Court action based on the same fraud allegations against Tepper and Esola, and sought to quiet title to the Friar property against third parties who had obtained interests in that property.[4]

In April 2017, Overland amended the San Diego County complaint to add two defendants, Wells Fargo National Association, Inc., and A&S Park Boulevard, LLC. On August 11, 2017, A&S specially appeared and moved to dismiss the action for failure to serve the complaint within three years. Five days later, it filed a section 170.6 peremptory challenge against Superior Court Judge Eddie Sturgeon. Judge Sturgeon granted the motion and, in August 2017, Judge Wohlfeil was assigned as the independent calendar judge in the San Diego County action. Judge Wohlfeil later denied Wells Fargo and A&S's motion to dismiss.

On October 18, 2017, Overland filed an amended complaint adding various defendants to the San Diego action, including the Sunrise defendants. The Sunrise

---

4 Overland filed a Los Angeles County action against another party, but this action has reached the final judgment stage and is not part of this writ proceeding. We thus omit reference to this action and the defendant in that action.

defendants specially appeared and moved to dismiss the action against them, arguing they were not properly served within three years after the action was filed and therefore the court had no jurisdiction over them. The court granted this motion, finding dismissal was mandatory under section 583.250.

Meanwhile, Overland had filed a petition with the Judicial Council to coordinate the San Diego action with its other actions, including the Los Angeles Friar action and the San Bernardino Euclid action. Overland filed the petition under rules applicable to the coordination of complex cases. (See §§ 404, 404.1; rule 3.520.)

In November 2017, the Chief Justice/Judicial Council Chair authorized the San Diego Superior Court to assign a superior court judge to sit as the coordination motion judge to determine whether the identified matters were complex and, if so, whether coordination of those actions was appropriate. The presiding judge of the San Diego Superior Court appointed Judge Wohlfeil as the complex-case coordination motion judge.

After briefing, on January 18, 2018, Judge Wohlfeil denied the motion to coordinate under the complex case rules, finding the cases were not "complex" under the applicable statute. (See § 404; rule 3.400(a).) But the court said its "ruling [was] made without prejudice to [Overland's] ability to seek to transfer and consolidate the related pending actions" under noncomplex case rules.

Seven days later, Overland moved to transfer and consolidate the San Bernardino Euclid action and the Los Angeles Friar action with the San Diego action. Overland made the motion under section 403, which governs transfer of noncomplex cases that involve common factual and legal questions, and permits a court to consolidate cases "for

6

trial pursuant to [s]ection 1048 without any further motion or hearing." (§ 403.) Rule 3.500 contains rules for noncomplex-case transfer proceedings, including requiring a noticed motion supported by a declaration and factual findings by the trial court. (Rule 3.500(b), (c), (d).)

On February 16, 2018, the Sunrise defendants filed an opposition to Overland's section 403 transfer/consolidation motion. The Sunrise defendants filed this opposition in the San Diego County action; their opposition papers contained the San Diego case caption and identified Judge Wohlfeil as the judge presiding over the matter. In their opposition, the Sunrise defendants urged Judge Wohlfeil to exercise his discretion to deny the motion based on their assertions that the factual circumstances in each action were different; the cases were at different litigation stages; and consolidation would substantially inconvenience the parties and witnesses.

Judge Wohlfeil presided over the hearing on the motion, which was attended by Overland's counsel and counsel for each of the defendants, including the Sunrise defendants. After considering the parties' arguments, on March 2, the court issued a minute order granting Overland's motion, stating: "[T]ransfers of the Friar and Euclid actions [are] warranted pursuant to section 403, and . . . Rule 3.500(d). In addition, consolidation is proper pursuant to section 1048(a)." The court detailed its supporting findings, including that common factual and legal questions predominate; consolidation would be convenient and practical; a single fact finder would result in efficiency; the transfer and consolidation will preclude duplicative or inconsistent rulings; and the "San Diego Superior Court is uniquely familiar with the factual and legal issues involved given

7

the prior lawsuits addressing the same or similar wrongful conduct." The court scheduled a March 15, 2019 trial date.

The next week, on March 8, 2018, the Sunrise defendants' counsel served on all parties a section 170.6 peremptory challenge against Judge Wohlfeil, declaring the judge "is prejudiced" against them and/or their attorney, and "a fair and impartial trial or hearing cannot be had before such judge." On March 16, Judge Wohlfeil denied the challenge as "Not Timely."

On April 5, the Sunrise defendants filed a writ petition in this court challenging Judge Wohlfeil's denial of their section 170.6 peremptory challenge.

One week later, on April 13, Judge Wohlfeil denied a motion brought by certain of the Los Angeles action defendants seeking reconsideration of the ruling ordering the Los Angeles Friars action to be transferred and consolidated with the San Diego County action. The court found these defendants did not establish new or different facts and, even if they met this burden, the new facts "do not alter . . . the facts and reasoning underlying the decision to transfer and consolidate." The court also added an explanation for its ruling on the Sunrise defendants' peremptory challenge. The court stated: "[The Sunrise defendants] appeared in this action as early as February 16, [2018] . . . and did not file their [section] 170.6 [challenge] until March 16, 2018 . . . ."[5]

---

5    Although the court said the peremptory challenge was filed on March 16, the parties appear to agree it was filed on March 8, the date the document was signed by the Sunrise defendants' attorney. The appellate record does not appear to contain information showing a March 8 filing date. Whether the date was March 8 or March 16 is immaterial

8

On April 27, this court issued a stay of the San Diego County action, pending a determination on the Sunrise defendants' writ petition.

Three days later, the Sunrise defendants filed a motion in the San Bernardino County Superior Court requesting that the court retain the case and raising objections to the transfer order. There is no indication the San Bernardino court has ever ruled on the motion.

On May 8, we issued an order to show cause on the Sunrise defendants' writ petition. The parties thereafter filed briefs and supplemental briefs on the issues pertaining to the timeliness of the section 170.6 peremptory motion.

DISCUSSION

Section 170.6 permits "[a] party . . . appearing in . . . an action or proceeding" to disqualify the judge based on a sworn statement of the party's belief that the judge is prejudiced against that party or the party's attorneys. (*Pickett v. Superior Court* (2012) 203 Cal.App.4th 887, 892 (*Pickett*).) The judge has no discretion to refuse the challenge unless the statement is untimely or does not otherwise comply with the statutory procedural requirements. (*Ibid.*; see *Cybermedia, Inc. v. Superior Court* (1999) 72 Cal.App.4th 910, 914.) "The right to disqualify a judge under section 170.6 ' "is 'automatic' in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required." ' " (*Pickett,* at p. 892.)

---

because either date would have been more than 15 days after the Sunrise defendants filed their February 16 opposition.

9

The court denied the peremptory challenge as untimely. The Sunrise defendants contend the court erred because they timely filed their challenge within 15 days of Judge Wohlfeil's March 2 order granting Overland's transfer and consolidation motion. Overland counters that the statutory deadline was triggered by several events occurring before the March 2 date.

In resolving the parties' contentions, we focus on 170.6's statutory language. (See *Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 408 ["Peremptory challenges are creatures of statute."].) We examine "the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.) To the extent the statutory language is ambiguous, we consider the consequences of the possible constructions and the public policies sought to be achieved. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.) " ' "As a remedial statute, section 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it." ' " (*Pickett*, *supra*, 203 Cal.App.4th at p. 892.) The statute also seeks to "strike a balance between the needs of litigants and the operating efficiency of the courts." (*Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1032.) To implement this latter intent, the courts must be " 'vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' " (*Id.* at p. 1033.)

On timeliness requirements, section 170.6 states that a challenge is permitted any time before the trial or hearing begins, but then sets forth three exceptions, each of which

10

mandates an earlier filing. (See *People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1171-1172; *Entente Design, Inc. v. Superior Court* (2013) 214 Cal.App.4th 385, 389-390.) The trial court found the "all purpose assignment" statutory exception applied here. (§ 170.6, subd. (a)(2).) This rule states: "If directed to the trial of a civil cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 15 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 15 days after the appearance." (*Ibid*.)

Both parties recognize this exception applies here. We agree. In August 2017 Judge Wohlfeil was assigned to preside over the San Diego County action as the independent calendar judge, and thus had been assigned the matter for all purposes on that date. Therefore, under section 170.6, subdivision (a)(2), the Sunrise defendants were required to file their peremptory challenge "within 15 days after notice of the all purpose assignment, *or* if the party has not yet appeared in the action, then within 15 days after the appearance." (Italics added.)

The Sunrise defendants devote most of their briefing in this writ proceeding to arguing the first triggering condition was inapplicable before the court issued its March 2 transfer and consolidation order. We agree that because the Sunrise defendants were not defendants in the action in August 2017 when Judge Wohlfeil was appointed the independent calendar judge, they obviously had no obligation to file any peremptory challenge within 15 days of that time. The statutory time period triggered by the notice of assignment applies when the existing parties (those who have appeared in the action)

11

receive the notice of the assignment.  Otherwise, the next clause "*or* if the party has not *yet* appeared in the action . . ." would have no meaning.  (§ 170.6, subd. (a)(2), italics added.)

The Sunrise defendants, however, largely ignore or minimize the second statutory trigger for the 15-day time period:  "if the party has not yet appeared in the action, *then within 15 days after the appearance*."  (§ 170.6, subd. (a)(2), italics added.)  "The word 'appearance' as it is used in section 170.6 consistently has been interpreted to mean 'general appearance.'  [Citations.]  It has been construed in this fashion for the simple reason that it is only upon the making of a general appearance that a defendant submits to the jurisdiction of the court."  (*La Seigneurie U.C. Holdings, Inc. v. Superior Court* (1994) 29 Cal.App.4th 1500, 1504; accord, *School Dist. of Okaloosa County v. Superior Court* (1997) 58 Cal.App.4th 1126, 1131 (*Okaloosa*).)

For purposes of this case, we accept that the Sunrise defendants did not make a general appearance in the action in October 2017 when they *specially appeared* in moving to dismiss Overland's amended complaint seeking to add them as Doe defendants.  We also accept the 15-day period did not begin to run when the Sunrise defendants filed their opposition to Overland's complex-case coordination motion.  As discussed below, complex-case coordinations have special procedural rules, including those governing section 170.6 motions.  (See rule 3.516.)

But the Sunrise defendants did make a general appearance in the San Diego action when they filed their opposition to Overland's section 403 consolidation motion on February 16, 2018.  Although they were not yet parties in the San Diego action, they

12

were existing parties in Overland's San Bernardino action to which the motion to consolidate and transfer was directed and they filed papers in the San Diego action requesting that Judge Wohlfeil exercise his discretion to deny the motion.

By filing a petition acknowledging Judge Wohlfeil's jurisdictional authority over their case and his authority to transfer and consolidate the case with the San Diego action, and by recognizing that Judge Wohlfeil had been assigned as the independent calendar judge, the Sunrise defendants "appeared in the action" on February 16, 2018, within the meaning of section 170.6, subdivision (a)(2), triggering the 15-day judge-for-all-purposes rule.

Section 1014 states: "A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396(b), moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant."  But this list "is not exclusive."  (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147; *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 420.)  " 'What is determinative is whether [the] defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed.' "  (*Hamilton*, at p. 1147; accord, *Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 171; *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1756-1757.)  "[I]f an appearance is for any purpose other than to question the jurisdiction of the court[,] it is general." (*Berard Construction Co. v. Municipal Court*

13

(1975) 49 Cal.App.3d 710, 715 (*Berard Construction*); accord, *In re Vanessa Q.* (2010) 187 Cal.App.4th 128, 135 (*Vanessa Q.*).)

Thus, opposing a motion other than on jurisdictional grounds normally constitutes a general appearance. (*People v. Ciancio* (2003) 109 Cal.App.4th 175, 192; see *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688-1689.) "[A] general appearance need not be ' "a formal, technical step or act . . ." ' [citation]; rather the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person." (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397; see *In re R.L.* (2016) 4 Cal.App.5th 125, 148; *Vanessa Q.*, *supra*, 187 Cal.App.4th at p. 135; *Ciancio*, at pp. 192-193; *Berard Construction*, *supra*, 49 Cal.App.3d at p. 715 [a motion to dismiss on ground of inconvenient forum reflects a general appearance because it "concedes jurisdiction" and "asks the court to decline to exercise the jurisdiction it constitutionally has"].)[6]

The Sunrise defendants made a general appearance in the San Diego action on February 16, 2018, when they filed their opposition to the motion to transfer and consolidate their San Bernardino action with the San Diego action. The Sunrise defendants' opposition papers contained the caption of the San Diego County Superior Court action and the superior court case number for the San Diego action, and identified

---

[6]    The *Berard Construction* court held that although the motion to dismiss on the ground of inconvenient forum would normally constitute a general appearance, this result was changed by a statute providing that a party who objects on this ground does not make a general appearance. (See § 418.10, subd. (a)(2), (e)(1); *Berard Construction*, *supra*, 49 Cal.App.3d at pp. 714-715.) There is no similar statutory exception applicable to appearances to challenge section 403 transfer motions.

14

Judge Wohlfeil as the judge presiding over the San Diego action. By filing this opposition and separate evidentiary objections, the Sunrise defendants necessarily conceded the court had the jurisdiction and statutory authority to order the transfer, but raised numerous arguments in an effort to convince Judge Wohlfeil to maintain the status quo and allow the case to be tried in San Bernardino. An appearance is general if it is for any purpose other than to question the court's jurisdiction. (*Zobel v. Zobel* (1907) 151 Cal. 98, 101; *Berard Construction*, *supra*, 49 Cal.App.3d at p. 715.)

In reaching this conclusion, we are aware that in their papers filed in opposition to Overland's transfer/consolidation motion, the Sunrise defendants referred to themselves as "Specially Appearing Defendants." However, a statement that an appearance is special is not conclusive on the issue. (*Ciancio, supra,* 109 Cal.App.4th at p. 192.) " ' "Whether an appearance is general or special is determined by the character of the relief sought and not by the intention of the party that it shall or shall not operate as a general or special appearance." ' " (*Slaybaugh v. Superior Court* (1977) 70 Cal.App.3d 216, 221.)

The Sunrise defendants argue they did not "appear[] in the action" within the meaning of section 170.6, subdivision (a)(2)'s all-purpose-assignment exception because they were not parties in the San Diego County action until the court issued the transfer and consolidation order. However, the critical point is that they were existing parties in Overland's San Bernardino action and they filed an opposition to the transfer motion in the San Diego action. By filing a response *in the San Diego* action that had been assigned to Judge Wohlfeil "for all purposes," they "appeared in the action" in a manner sufficient to trigger the time period for filing any peremptory challenge to Judge

15

Wohlfeil.  The Sunrise defendants filed papers opposing a transfer motion and, in so doing, asked Judge Wohlfeil to exercise his authority to deny Overland's request to consolidate its San Bernardino case with the San Diego case.  This action constituted a general appearance in the San Diego action sufficient to trigger the 15-day period for filing a section 170.6 challenge.  Because the Sunrise defendants did not file their challenge within 15 days after they appeared, their challenge was untimely.

In urging us to find their peremptory challenge timely, the Sunrise defendants rely principally on three cases.  (*Stone v. Superior Court* (1994) 25 Cal.App.4th 1144 (*Stone*); *Philip Morris v. Superior Court* (1999) 71 Cal.App.4th 116 (*Philip Morris*); *Nissan Motor Corp. v. Superior Court* (1992) 6 Cal.App.4th 150 (*Nissan*).)  Although these cases superficially appear helpful to the Sunrise defendants, on closer examination they have no applicability to the circumstances here.

*Stone* and *Philip Morris* arose in the context of a complex-case coordination under section 404, which is governed by different procedures and by rule 3.516, which sets forth special rules for complex-case peremptory challenges.[7]  Rule 3.516 is contained in the California Rules of Court section entitled "Procedural Rules Applicable to All Complex Coordination Proceedings."  The rule was promulgated to address the "complex

---

[7]     Rule 3.516 states:  "A party making a peremptory challenge by motion . . . regarding an assigned judge must submit it in writing to the assigned judge within 20 days after service of the order assigning the judge to the coordination proceeding.  All plaintiffs or similar parties in the included or coordinated actions constitute a side and all defendants or similar parties in such actions constitute a side for purposes of applying . . . section 170.6."

16

and time consuming process" by which complex cases are coordinated under section 404 (with Judicial Council involvement in case assignments), and to recognize the unique issues arising from this process. (*Okaloosa*, *supra*, 58 Cal.App.4th at p. 1135.) The courts have thus strictly limited the application of rule 3.516 to the section 404 complex-coordination cases. (*Id.* at p. 1136 [the peremptory challenge "rules developed for [complex] coordinated cases do not apply . . . to *anything* other than [section 404] 'coordinated actions' in the statutory sense of those words"]; see *Farmers Ins. Exchange v. Superior Court* (1992) 10 Cal.App.4th 1509, 1511-1512.)

Because *Stone* and *Philip Morris* involved interpretations of rule 3.516 (or its substantively identical predecessor) and the specific procedures surrounding complex-case coordination, they have minimal applicability to the issues before us. The *Stone* court held a party challenging the assignment of a complex-case coordination judge (§ 404) pursuant to section 170.6 must file the challenge within 20 days after *either* the assignment of the judge ruling on the complex-case consolidation motion *or* the assignment of the judge to preside over the merits of the cases. (*Stone, supra,* 25 Cal.App.4th at pp. 1146-1147.) The court based its conclusion on the language of the predecessor to rule 3.516 and the process for assigning judges under the complex-case rules. The court found that requiring a defendant to file its peremptory motion within 20 days of the complex-case motion judge assignment would not sufficiently protect the defendant's section 170.6 right because the defendant could not reasonably predict the trial judge's identity under the complex-case coordination procedures. (*Stone*, at p. 1147.) The court explained that the complex-case coordination rules expressly

17

contemplate that the motions judge will often be different from the trial judge because the rules provide that *if* the motions judge deems coordination to be appropriate, the judge must report to the Judicial Council chair, who is then responsible for selecting the court and assigning the judge. (*Ibid.*; see § 404.3.)

*Stone*'s holding and reasoning do not extend to the situation here. There is no Judicial Council involvement in a section 403 judge assignment and instead the party moving for a section 403 transfer generally seeks to transfer and consolidate an action with the existing action. Thus, where, as here, an independent calendar judge has already been assigned for all purposes in the existing action, and all parties and potential parties are aware of the identity of the trial judge when a transfer motion is brought, the parties would be on notice that this judge will be presiding over the trial. They are aware that if they intend to challenge this trial judge, they have 15 days to do so after making an appearance in the judge's department.[8]

*Philip Morris* is similarly distinguishable. (*Philip Morris*, *supra*, 71 Cal.App.4th 116.) There, the plaintiffs timely filed a peremptory disqualification challenge under the predecessor to rule 3.516 in a complex-case coordination proceeding. The defendant argued the challenge was ineffective because one of the plaintiffs had previously filed a

---

[8]     The Sunrise defendants argue that they did not necessarily know who would be the trial judge because Judge Wohlfeil had the discretion to transfer the case to another court. (See rule 3.500(h).) The possibility that a judge could transfer the action to a different department is not analogous to the complex-case assignment rules that contemplate a different trial judge and motion judge, nor does the possibility of such future events relieve defendants of their obligation to timely file a section 170.6 motion.

peremptory challenge before the plaintiffs had petitioned to coordinate the cases. (*Philip Morris*, at pp. 119-120.) The Court of Appeal held the prior peremptory challenge did not preclude the later challenge. The court based its conclusion on a close examination of the language in the predecessor to rule 3.516 that permitted each "side" to challenge an assigned coordination judge in a complex case coordination proceeding. (*Philip Morris*, at pp. 120-126.) This analysis is inapplicable here because we are governed by section 170.6's timing rules and not the special procedures of rule 3.516, and the issue raised here involves only timing and not peremptory challenges by a particular side.

The third case relied upon by the Sunrise defendants did involve a noncomplex-case consolidation, but it is factually distinguishable. (*Nissan*, *supra*, 6 Cal.App.4th 150.) In *Nissan,* a trial judge had been presiding over a products liability action against a car manufacturer for more than one year. (*Id.* at p. 153.) The judge then sua sponte consolidated this action with two other products liability actions against the same manufacturer brought by separate groups of plaintiffs. (*Ibid.*) When the defendant learned of this consolidation, it immediately filed a peremptory challenge with respect to the two transferred cases. (*Id.* at pp. 153-154.)

The trial judge found the challenges were too late, but the Court of Appeal disagreed. (*Nissan*, *supra*, 6 Cal.App.4th at p. 154.) The *Nissan* court reasoned that the manufacturer had exercised its peremptory challenge *on the same day* it was notified of the reassignment, and thus complied with the deadline imposed by section 170.6. (*Nissan*, at p. 155.) The court additionally found that "[a] party's acquiescence of a judge to hear one action does not impair his or her right to exercise a challenge to prevent that

19

judge from hearing another matter, even if that matter raises issues closely related to those in the first action." (*Ibid.*) The court emphasized that the actions were "three separate and distinct cases, entitled to separate challenges under section 170.6." (*Ibid.*)

We agree with *Nissan's* conclusion and reasoning. The *Nissan* defendant filed its peremptory challenges against the trial judge less than 24 hours after learning the two new cases were assigned to this judge through the judge's own motion. Additionally, as the *Nissan* court noted, collateral estoppel principles do not apply to disqualification motions and the statutory procedures allow each side to file one challenge in each case, even if the case was similar to a lawsuit previously before the same trial judge. But this case is different. The consolidation and transfer was not accomplished through a sua sponte motion. The Sunrise defendants had notice Judge Wohlfeil was the independent calendar judge assigned to Overland's case and they appeared in the action to oppose the transfer and consolidation motion. At that point, defendants had the opportunity to file their peremptory challenge within 15 days of the appearance. Unlike the *Nissan* defendant, their challenge was filed more than 15 days after they appeared in the action.

Our conclusion that the peremptory challenge was untimely is consistent with the policies underlying section 170.6 that seek to ensure public confidence in the judiciary and protect a litigant's right to a fair and impartial adjudicator, while at the same time preclude judge-shopping and the use of the 170.6 procedure to obstruct efficient judicial administration and to gain unfair tactical advantage. (See *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1252-1253; see also *McNair v. Superior Court* (2016) 6 Cal.App.5th 1227, 1232, 1234.) By determining the statute requires defendants who are

20

parties to a noncomplex-case transfer/consolidation motion to file their peremptory challenge when they make a general appearance in the department of the judge assigned for all purposes, we have assured that litigants retain a full opportunity to assert their peremptory challenge and maintain their right to a fair and impartial adjudicator, while at the same time reducing the possibility of unnecessary delays and waste of judicial resources.

In its return, Overland argues that if the Sunrise defendants were not required to challenge Judge Wohlfeil earlier, their challenge was premature because the San Bernardino and Los Angeles actions have not been formally transferred to the San Diego Superior Court. We need not reach the issue, but briefly reference the transfer process as there appears to be considerable confusion regarding this issue.

Section 399, subdivision (a) provides: "If an order is made transferring an action or proceeding under any provisions of this title, the clerk shall, after expiration of the time within which a petition for writ of mandate could have been filed pursuant to Section 400 [20 days], or if a writ petition is filed after judgment denying the writ becomes final, and upon payment of the costs and fees, transmit the pleadings and papers of the action or proceeding . . . to the clerk of the court to which the action or proceeding is transferred." Rule 3.500(f) states: "If the court orders a case or cases transferred, the moving party must promptly take all appropriate action necessary to assure that the transfer takes place and that proceedings are initiated in the other court or courts to complete consolidation with the case pending in that court."

21

It appears from the record that Overland has paid the required transfer fees to the superior court clerks' offices. And the 20-day deadline for challenging Judge Wohlfeil's transfer order has long passed. The defendants in the Los Angeles action challenged Judge Wohlfeil's transfer order in this court, and we summarily denied that challenge on April 9, 2018. Thus, it is not clear to us why the cases have not yet been transferred to the San Diego Superior Court. Although we stayed the San Diego action to resolve the Sunrise defendants' section 170.6 challenge, this stay did not apply to the Los Angeles and San Bernardino actions, including any duties to comply with Judge Wohlfeil's transfer order. This writ proceeding concerns the validity of the section 170.6 challenge, not the validity of Judge Wohlfeil's decision to transfer and consolidate the three cases. To the extent the Los Angeles and San Bernardino courts believed that any transfer could not be effectuated during the stay of the San Diego action, that stay will now be lifted.

In any event, the issue whether these cases have been formally transferred does not affect our analysis. As explained, the Sunrise defendants' section 170.6 challenge was untimely because they had made an appearance in the action on February 16, more than 15 days before filing the challenge. Whether the case was or was not formally transferred under required procedures does not affect this conclusion.

Based on our determinations in this opinion, we do not reach Overland's alternate grounds for supporting Judge Wohlfeil's finding that the section 170.6 challenge was untimely.

22

DISPOSITION

Petition denied.  The parties are to bear their own costs in the writ proceeding.

The stay previously issued by this court is vacated.


                                                              HALLER, J.

WE CONCUR:


HUFFMAN, Acting P.J.


NARES, J.