Filed 2/26/21  Wells Fargo Bank, National Assn. v. Superior Court CA4/1

## OPINION AFTER TRANSFER FROM THE CALIFORNIA SUPREME COURT

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br><br> OVERLAND DIRECT, INC., <br><br> Real Party in Interest. | D078087 <br><br><br> (San Diego County Super. Ct. No. 37-2013-00078078-CU-BT-CTL) |

ORIGINAL PROCEEDING in mandate.  Joel R. Wohlfeil, Judge.  Petition denied.

Fidelity National Law Group, David B. Owen; Greines, Martin, Stein & Richland, Robin Meadow and Jeffrey Gurrola for Petitioner Wells Fargo Bank, National Association.

Philip A. Metson for Petitioner A&S Park Boulevard LLC.

The Leichter Firm, Kevin J. Leichter and Andrew Hewitt for Petitioners Sunrise Financial LLC, Nice Team LLC, and E & E Mortgage Bankers Corp.

Epport Richman & Robbins, Steven Huskey, Kimia Sehati and Chrisopher R. Nelson for Petitioners Houshang Aframian, Amir Aframian, and Maria Aframian.

No appearance for Respondent.

Blanchard, Krasner & French, Kipp Williams, John F. Whittemore; Law Offices of Homan Mobasser and Homan Mobasser; Hill, Farrer & Burrill, Daniel J. McCarthy; Law Offices of George Rikos and George Rikos for Real Party in Interest.


Petitioners Wells Fargo Bank, N.A., A & S Park Boulevard, LLC, Sunrise Financial, LLC, Nice Team, LLC, E & E Mortgage Bankers Corp., Houshang Aframian, Amir Aframian, and Maria Aframian (referred to collectively as "Petitioners") are defendants in three consolidated actions filed by real party in interest Overland Direct, Inc. and CTPC, LLC (collectively Overland). After nearly seven years, including a seven-month delay caused by the court closure in response to the COVID-19 pandemic, the case was finally set to begin a first-phase bench trial in October 2020. Petitioners, however, requested another six-month continuance due to their concerns over the pandemic. The trial court denied the continuance request, but implemented a wide range of measures to protect the health of everyone involved in the trial and allowed the parties to attend remotely.

In their writ petition, Petitioners contend the trial court abused its discretion in finding the Petitioners failed to establish good cause for a

2

continuance of their civil bench trial due to concerns about the COVID-19 pandemic. Alternatively, they contend that, as a matter of law, the trial could not proceed in the manner proposed by the trial court because it would violate a myriad of public health orders and would violate the parties' right to be physically present and participate at trial.

We see no abuse of discretion by the trial court in denying the request for a continuance of trial. We therefore deny the petition. Any renewed request for a continuance based on the circumstances as they exist following the finality of this writ proceeding must be considered by the trial court in the first instance at that time.

## FACTUAL AND PROCEDURAL BACKGROUND

As we discussed in a prior opinion arising from this same litigation, Overland alleges Petitioners, along with other defendants that did not join in the writ petition, defrauded it of multiple parcels of real property and seeks to recover title to the parcels. (*Sunrise Financial, LLC v. Superior Court* (2019) 32 Cal.App.5th 114, 119-120 (*Sunrise Financial*).)

The earliest of the consolidated actions was filed in 2013 and multiple procedural hurdles and roadblocks precluded the action from proceeding to trial. (*Sunrise Financial*, *supra*, 32 Cal.App.5th at pp. 119-120.) The actions were stayed while the prior writ proceeding was pending in this court. Thereafter, a trial date of March 20, 2020 was set. As courts closed across the state due to the pandemic, the trial court continued the trial date in this case to September 18, 2020. Thereafter, the court on its own motion continued trial again until October 23, 2020, and then again to October 26, 2020.

On October 13, 2020, Petitioners filed a "joint emergency health-risk-based ex parte application . . . to continue the trial" for at least six months.

3

Petitioners argued there was good cause to continue the trial because it would require a large indoor gathering of numerous people who would be at risk of contracting COVID-19, some of whom are at increased risk from the virus because they are older and infirm.  Petitioners further argued holding the trial would violate the presiding judge's general order and the County of San Diego Health Officer's orders restricting the size of indoor gatherings.  As "circumstances unique to this action" allegedly showing good cause for the continuance, Petitioners listed logistical problems and lack of safety precautions at the courthouse; the involvement of parties, attorneys, and witnesses who do not live in San Diego; personal and family hardships of attending trial in person during the pandemic; the risk of contagion and the need to prevent a " 'super-spreader event' "; and the lack of any priority for this civil litigation.

Overland opposed the application on the ground Petitioners had not shown good cause for the requested continuance.  Overland contended the trial court had adequate protocols to address COVID-19 concerns; Petitioners' concerns about the increased risk of COVID-19 to certain trial participants were not adequately supported by evidence; the family hardship and inconveniences raised by Petitioners would exist regardless of the pandemic; parties with health concerns could attend by videoconference; the trial court had cleared the trial with the presiding judge; the health officer's restrictions on gatherings did not apply to the "essential business" of the courts; and other factors in the applicable rule of court supported denial of the continuance.  (See Cal. Rules of Court, rule 3.1332(d).)

The trial court held a hearing on October 14, 2020, found no good cause to continue the trial, and denied Petitioners' application.  In a detailed minute order issued five days later, the court set out protocols for the trial.

4

Only one witness would be allowed in the courtroom at a time, would testify behind a plexiglass shield, and the witness stand would be cleaned between witnesses. Counsel would use the podium between counsel tables or sit at counsel table to question witnesses, and the podium would be cleaned after each use. Those handling exhibits would wear gloves. In addition to the witness and court staff, only 14 persons would be allowed in the courtroom at any given time, with four seats allocated to Overland; three to Wells Fargo, N.A., three to A & S Park Boulevard, LLC; three to Sunrise Financial, LLC, Nice Team, LLC, and E & E Mortgage Bankers Corp.; and one to the Aframians. Each side would also be allowed one technician in the courtroom during its presentation. During breaks and recesses, the courtroom deputy would dismiss trial participants to ensure social distancing. Parties not physically present in the courtroom would be permitted to observe the proceedings remotely by videoconference.

Following the trial court's denial, Petitioners filed a petition for writ of mandate in this court challenging the trial court's order and seeking an immediate stay. In support of their writ petition, Petitioners moved for judicial notice of 14 "documents reflecting official acts and enactments of federal, state, and county governments relating to the ongoing Covid-19 pandemic." (See Evid. Code, §§ 452, 459.) They contend the documents "are relevant to show the extraordinary health risks posed by the Covid-19 pandemic and the extraordinary lengths to which governments have gone— and have required their citizens to go—in order to slow the spread of the virus. This essential factual backdrop makes clear the extent to which the trial court has abused its discretion in ordering an in-person trial in this large, multi-party consolidated action."

On October 23, 2020, this court summarily denied the writ petition but granted Petitioners' motion and supplemental motion for judicial notice. On October 26, trial commenced as planned while the Supreme Court considered a petition for review. Later that same day, the Supreme Court stayed trial court proceedings while it considered the petition for review. On November 6, 2020, the Supreme Court granted the petition for review and transferred the matter with directions to this court to vacate the denial order and to issue an order to show cause why relief should not be granted. Having now followed the directions of the Supreme Court, we consider the merits of the writ petition.

DISCUSSION

I

Petitioners pray for a writ directing the trial court to vacate its order denying their application for a six-month continuance of the trial and to enter a new order granting the application. They assert the trial court erred by denying the continuance because the health risks from the COVID-19 pandemic to participants in the trial, some of whom are elderly and have underlying medical problems that put them at increased risk from COVID-19, constitute good cause for the continuance.

We begin, as we must, with the standard of review. "However convoluted the facts, or complex the issues, the standard of review is the compass that guides the appellate court to its decision. It defines and limits the course the court follows in arriving at its destination. Deviations from the path, whether it be one most or least traveled, leave writer and reader lost in the wilderness." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

6

Petitioners fail to address the proper standard of review in their petition, which likely affects their entire presentation of the issues before this court. "Arguments should be tailored according to the applicable standard of appellate review." (*Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388.) As courts have advised counsel, "counsel's failure to acknowledge the proper standard of review might, in and of itself, be considered a concession of lack of merit." (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)

As real parties in interest correctly argue in their return to the petition, we review a trial court's ruling on a request to continue trial under the abuse of discretion standard of review. (*Stroud v. Superior Court* (2000) 23 Cal.4th 952, 968.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of California* (2012) 55 Cal.4th 747, 773, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 377.) A Court of Appeal "should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice. . . . 'It is fairly deducible from the cases that one of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice. [Citations.] Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Under this deferential standard of review, this court is *not* tasked with independently determining whether we believe a continuance was warranted under the circumstances that existed at the time the trial court considered the request for a continuance. "We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882.)

While acknowledging the deferential standard of review, we must also consider the trial court's order denying the request for continuance in the proper policy context. The Legislature has tasked trial court judges with "the responsibility to eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action." (Gov. Code, § 68607.) To fulfill this responsibility, they must "[c]ommence trials on the date scheduled" and "[a]dopt and utilize a firm, consistent policy against continuances, to the maximum extent possible and reasonable, in all stages of the litigation." (*Id.* at subds. (f), (g).) As such, requests for continuance are disfavored and a trial court may grant a request "only on an affirmative showing of good cause requiring the continuance." (Cal. Rules of Court, rule 3.1332(c).)

"A motion for continuance is addressed to the sound discretion of the trial court. [Citation.] However, ' "[t]he trial judge must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair

8

hearing is reversible error.  [Citations.]" ' [Citation.]  [¶] 'Judges are faced with opposing responsibilities when continuances . . . are sought.  On the one hand, they are mandated by the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) to actively assume and maintain control over the pace of litigation.  On the other hand, they must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies. [Citation.]  Such decisions must be made in an atmosphere of substantial justice.  When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.  [Citation.]' " (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395.)

In rule 3.1332 of the California Rules of Court, the Judicial Council set forth multiple possible grounds for a continuance.  (*Id.* at rule 3.1332(c).) Here, in their application for a continuance, Petitioners cite only two of these circumstances:  "[t]he unavailability of a party because of death, illness, or other excusable circumstances" and "[t]he unavailability of trial counsel because of death, illness, or other excusable circumstances."  (*Id.* at rule 3.1332(c)(2), (3).)  They asked the trial court to consider the relevant factors and also relied on the "catch-all" provision permitting a court to consider "[a]ny other fact or circumstance relevant to the fair determination of the motion or application."  (*Id.* at rule 3.1332(d)(11).)

Petitioners did not focus on the present illness or death of parties or counsel, but rather the *threat* of illness or death.[1]  As framed in their application, "[p]ostponement is warranted because an in-person trial in a

---

[1]     While it is not the focus of the continuance request, Petitioners do rely on the declaration of one party representative who was ill and advised to not travel.  As we discuss *post*, the trial court's order allowing parties to attend remotely addressed this one concern.

9

limited-capacity courtroom with a substantial number of participants is a large gathering that violates state and county guidance and orders and is contrary to public policy against exacerbating the spread of Covid-19. The age, condition, and health of many trial participants places them at clear risk for serious health complications, including severe illness and death from Covid-19."

As Petitioners note, this case is not the first in which an appellate court considers whether good cause exists to continue a trial during the COVID-19 pandemic. The other cases to consider the issue, however, have arisen in circumstances distinguishable from this case. In *Stanley v. Superior Court of Contra Costa County* (2020) 50 Cal.App.5th 164, the First District, Division Four, upheld a trial court decision that the pandemic constituted good cause to continue a criminal trial. (*Id.* at p. 170.) In *Bullock v. Superior Court* (2020) 51 Cal.App.5th 134, Division Five of the First District found the trial court abused its discretion in finding good cause to continue a preliminary hearing in a criminal proceeding. (*Id.* at p. 140; see also *Lacayo v. Superior Court* (2020) 56 Cal.App.5th 396, 399-400 [trial court abused its discretion in continuing preliminary hearing].) In *In re M.P.* (2020) 52 Cal.App.5th 1013, the Second District, Division Five, held that a juvenile court abused its discretion in continuing a hearing in a juvenile dependency proceeding without considering the children's interests. (*Id.* at p. 1022.) None of those cases involved the situation presented in this writ proceeding, in which litigants in a civil proceeding challenge a trial court's decision to allow a bench trial to proceed during the pandemic.

Turning to the merits, we must consider whether the trial court abused its discretion in finding Petitioners did not establish good cause for a continuance. In support of their application, Petitioners relied on

10

declarations from trial participants falling into three categories to establish good cause: parties, witnesses, and attorneys. Given the trial court's detailed order setting forth protocols for trial, it is important to consider each category of trial participants in turn.

Several parties submitted declarations, either on their own behalf or declarations from their physicians, discussing their personal concerns with contracting COVID-19 at trial. Although we do not discount their concerns, they fail to establish good cause to continue trial because their attendance at trial is not necessary. Although the trial court's order provided that each party would be afforded a seat for a representative in the courtroom, the trial court also established means for parties to attend the trial via videoconference over the internet. Although the parties challenge their exclusion from the courtroom, as we will discuss *post*, this accommodation addresses their concerns about contracting COVID-19. By participating remotely, they can avoid the personal risk associated with attending trial in person.

Next, Petitioners rely on a declaration from counsel for Wells Fargo detailing concerns about several witnesses. The declaration merely states that some witnesses are between 63 and 73 years of age and, therefore, at an increased risk. The trial court granted the specific request of one of these witnesses to testify remotely. Moreover, the court indicated to counsel that it would allow witnesses to testify remotely upon stipulation of counsel or, absent a stipulation, upon a showing of good cause.

For the remaining witnesses, which may also include several parties, Petitioners offered no particularized explanation for their heightened risk beyond their age and asked the trial court to accept this single fact as sufficient to warrant a continuance. At least one treatise has recognized that

11

although "COVID-19 circumstances *may* indicate good cause warranting a continuance (e.g., attorney, client or a witness tested positive for COVID-19 or who is in quarantine after exposure to a person who has tested positive for COVID-19)," a request based on these circumstances may *require* "a physician's declaration or other documentation." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2020) ¶ 1:358, pp. 1-105-1-106.) Here, Petitioners submitted no such declaration from a physician or other documentation regarding any witness.

Moreover, the trial court's order recognizes the potential risk to witnesses and institutes appropriate responsive measures. The trial court determined that only one witness would be allowed inside the courtroom at a time, would be able to maintain social distancing and testify behind a plexiglass shield, and would also be permitted to request to wear a mask while testifying. The witness stand would be sanitized between each witness.

Petitioners presented no evidence establishing that these measures were inadequate. Instead, they fault the trial court of failing to provide sufficient evidence to support the measures. Petitioners suggest that the court had a duty to demonstrate it consulted with a "health professional" or a "representative of the State of California or the County of San Diego" to provide advice on safety measures. This contention ignores the scope of our appellate review. "It is a fundamental principle of appellate procedure that a trial court judgment [or order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment [or order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Under the abuse of discretion standard of review, Petitioners must confront the " 'daunting task' " to "demonstrate that the

12

ruling was arbitrary, capricious, whimsical, or exceeded the bounds of reason." (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1171.)  The limits of our review preclude us from presuming the trial court erred or speculating that the court failed to properly consider the risks involved.  Without evidence from Petitioners establishing that the trial court's carefully-crafted order was arbitrary or capricious, we will not presume the court abused its discretion based on Petitioners' unfounded concerns.

Moreover, a party requesting that a trial be continued due to the absence of a witness bears the burden of showing that the witness's testimony is material and allowing the opposing party to admit the content of the witness's testimony.  (Code Civ. Proc., § 595.4; see also *Padda v. Superior Court* (2018) 25 Cal.App.5th 25, 28.)  Petitioners made no such showing here.  Thus, even if we assume some of these witnesses may be unavailable, Petitioners failed to establish that their unavailability constitutes good cause for a continuance.

Finally, Petitioners rely on several declarations from counsel, who claim for a variety of reasons that trial should be continued.  Most of these attorneys, all of whom reside in the Los Angeles area, do not rely on specific health issues, but rather list their concerns—including arranging childcare, lodging, and food during trial—that will make it difficult or inconvenient for them to attend trial in San Diego.  Two attorneys contend that underlying health conditions place them at higher risk, but neither adequately establishes that he is "unavailable."  One attorney expressly refused to "disclose particulars of my health other than in camera."

Although the trial court could consider these declarations in determining whether to continue trial, and this court can understand the

13

difficulties presented to counsel in having to attend an out-of-town trial, none of the attorneys establish that they are "unavailable." (Cal. Rules of Court, rule 3.1332(c)(3).) At most, they credibly establish that they would prefer to not attend trial during the COVID-19 pandemic.

While understandable, the preferences of counsel, when balanced against the trial court's interest in ensuring this long-delayed trial was resolved, do not establish that the trial court abused its discretion in deciding to deny the continuance request and allow the trial to proceed under the implemented measures intended to lessen the risk to all involved, including the court itself.

Considered altogether, the declarations submitted by Petitioners may establish that attending trial would have been difficult under the circumstances. These difficulties, however, were considered by the trial court, which addressed the concerns by preparing a detailed list of safety measures it would take during trial. In finding these measures to be adequate to sufficiently ameliorate the risk, the trial court did not abuse its discretion in finding no good cause to continue the trial.

II

Perhaps in recognition that they could not establish an abuse of discretion by the trial court, Petitioners focus on their contention that, as a matter of law, trial could not commence under the applicable superior court orders and county and state public health orders. Although they do not contend that absolutely no trial could proceed under any circumstances, they repeatedly assert that there cannot be "a trial in *this* case, in *this* courtroom, at *this* time." The record, however, does not support this contention.

Petitioners rely on the "Order of the Health Officer and Emergency Regulations" issued by the Public Health Officer of the County of San Diego

14

to support their claim that no trial may occur in this case. That order, which went into effect on October 10, 2020, directed that all persons are to remain in their homes "except for employees or customers traveling to and from essential businesses or reopened businesses as defined in sections 10 and 11, below, or to participate in individual or family outdoor activity as allowed by this Order." The order also prohibits all "gatherings," as defined in the order, that do not comply with the requirements of the California Department of Public Health Guidance for Private Gatherings. The order, however, specifies that the definition of "gatherings" does not include "[o]perations at essential businesses as defined in section 10a." Section 10a defines "[e]ssential business" as "any business or activity . . . designated by the State Public Health Officer as [']Essential Critical Infrastructure Workers.['] " In the list published by the State Public Health Officer, "government operations" are included in the definition of "Essential Critical Infrastructure Workers," including "[t]he Courts, consistent with guidance released by the California Chief Justice" and "[p]rofessional services, such as legal . . . services, when necessary to assist in compliance with legally mandated activities and critical sector services."

Petitioners acknowledge that these health orders permit the courts to function as "essential businesses," but note that the order allows essential businesses to operate only if "remote working is not practical." They contend that the trial court failed to find that a remote trial is not practical and, therefore, this trial is impermissible under the health order.

Petitioners, however, then claim in a footnote that they are *not* advocating for a remote trial, admitting that a remote trial would not be "desirable," but claim that a remote trial "*is* at least possible." The health orders, however, do not require a showing that remote work is *impossible*, but

15

merely *not practical*.  Petitioners implicitly admit a remote trial is not practical here in acknowledging a remote trial would not be "desirable" for "a case this complex."  Moreover, in claiming the parties have an absolute right to all be physically present in the courtroom during trial, as discussed *post*, Petitioners argue a position entirely inconsistent with permitting a remote trial.  Regardless, as discussed *ante*, Petitioners bear the burden of demonstrating the trial court's order was arbitrary or capricious.  Despite bearing this burden, Petitioners make no effort to show that a remote trial would be practical.  Accordingly, Petitioners fail to demonstrate that holding an in-person trial would violate the state and county health orders.

Next, Petitioners turn to the September 9, 2020, Order No. 090920-90 issued by the presiding judge of the superior court.  In that general order, the presiding judge superseded earlier orders closing the court and provided for in-person trials to resume, including jury trials.  The order details the portions of the courthouse that would be open to the public and requires that any in-person access "shall be subject to county, state, and federal public health guidance and other general orders of this court, including, but not limited to, social-distancing, face-covering, and screening requirements." Although the order does not list any courtrooms as being open to the public, it acknowledged that trials would resume and permitted access to such proceedings to "judges, commissioners, court staff, jurors, parties, attorneys, witnesses subpoenaed to testify . . . one assistant or support person if granted in response to an ADA request, and other authorized persons," later defined as including the media.

In a separate order, Order No. 090920-89, the Presiding Judge granted priority to in-custody criminal jury trials over all other jury trials and ordered that "all courtrooms available for jury trials will be used to conduct

16

in-custody criminal jury trials." That order, however, permitted a judicial officer to prioritize and commence a non-criminal trial for good cause. In such a case, the order requires the judicial officer to "communicate to the Presiding Judge the facts for and against the determination of priority over in-custody criminal jury trials."

Petitioners contend the trial court violated these orders by allowing the trial to proceed in this case. They contend that "the rock-bottom minimum requirements for proceeding with any kind of in person trial ought to include (a) a written petition by the trial judge to the Presiding Judge demonstrating both good cause and detailed protocols, established in consultation with qualified professionals, for *guaranteeing*—not just hoping for—the safety of all participants and (b) a written order from the Presiding Judge assessing the sufficiency of the cause shown and of the safety guarantees."

Petitioners provide no basis to support such strict requirements. The presiding judge's order requires only that the judicial officer "communicate" with the presiding judge regarding a non-criminal trial. Likewise, the general orders do not require a written order to allow such a trial to proceed. Although General Order No. 090920-89 prioritizes criminal jury trials, it also notes that the court would only be able to conduct two criminal trials during the week of October 26, when trial in this proceeding was set to begin. Given the slow start to criminal jury trials, the court obviously had a surplus of courtrooms available during the week of October 26 to conduct proceedings other than criminal jury trials such that a trial in this case would not preclude a criminal trial from occurring.

Petitioners acknowledge that the trial court apparently "communicated" with the presiding judge regarding this trial and, based on that communication, informed the parties that the presiding judge had

17

consulted with others and "authorized us to resume bench trials in person." We decline Petitioners' request that we interfere with the internal affairs of the superior court by imposing specific requirements for the communications between trial judges and the presiding judge regarding the scheduling of trials when no such requirement is supported by any order, rule, or statute cited by Petitioners.

Thus, Petitioners fail to demonstrate that the state, county, or superior court orders categorically preclude this trial from occurring. Although they continue to raise various concerns about cleaning and access, the trial court's order considered these concerns and these matters were within the discretion of the trial court. Despite their efforts to convince this court that additional measures are required, they fail to show any abuse of discretion by the superior court. This court will not substitute its judgment for that of the trial court.

### III

Petitioners also contend that the trial court's order violates the right of the parties to be physically present at trial. Petitioners contend that "parties have *both* a statutory *and* a constitutional right to be present in the courtroom during trial, to communicate with counsel in real time, to give counsel the benefit of their percipient factual knowledge, and to assist in cross-examination."

Petitioners, however, fail to establish any absolute right to be physically present in the courtroom. They rely on Evidence Code section 777, which permits a trial court to exclude witnesses from the courtroom with the qualification that "[a] party to the action cannot be excluded under this section." (See also *People ex rel. Curtis v. Peters* (1983) 143 Cal.App.3d 597,

18

601-602.) They also assert a constitutional due process right to be present at trial.

However, California courts, including this court, have consistently held that there is no absolute right for parties to be present at trial and that the due process right to be present at trial can be protected when a party is represented by counsel. (See, e.g., *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 536; *Arnett v. Office of Admin. Hearings* (1996) 49 Cal.App.4th 332, 338-339; *Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1686-1687.)

Although the parties indisputably have an interest in being physically present in the courtroom, the extraordinary circumstances presented by the COVID-19 pandemic warrant the physical exclusion of some parties from the courtroom while maintaining the ability to watch the proceedings via a live video feed. The court balanced the competing interests by allowing party representatives to be present in the courtroom with additional parties participating remotely. Despite Petitioners' claim to the contrary, the trial court did not exclude some parties from the courtroom as a matter of "expediency," but rather to protect the health of all involved. Petitioners cannot inconsistently claim that the trial court had no reason to exclude some parties from the courtroom while at the same time asserting that the court must comply with health guidance recommending social distancing and limited gatherings. Given the difficult circumstances, the trial court balanced the competing interests and protected the parties' interest in viewing the proceedings to the greatest extent possible. Although Petitioners believe that these competing interests could be protected by a continuance, we have already concluded that the trial court did not abuse its discretion in denying the request for a continuance.

19

## IV

All parties ask this court to take judicial notice of certain documents, many of them relating to changed circumstances since the trial court's order denying the application for a continuance. We grant all of these requests for judicial notice, but they do not affect the outcome of this proceeding to the extent they were not provided to the trial court or were issued after the trial court's rulings. "Although a reviewing court may take judicial notice of matters not before the trial court, . . . the reviewing court need not give effect to such evidence." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)

Here, Petitioners applied for a continuance on the basis that the trial could not be safely conducted on October 26, 2020. They supported their application with the circumstances of the parties, the prevalence of COVID-19 in the community, and the public health orders as they existed at that point in time. When reviewing whether the trial court abused its discretion in denying the request for a continuance, our review is limited to the evidence before the court when it heard the request. (See *People v. Hartsch* (2010) 49 Cal.4th 472, 491.) "Thus, '[m]atters occurring after entry of judgment are ordinarily not reviewable: The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation.' " (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 706.) This principle applies equally in this writ proceeding.

A change in circumstances after entry of the order may render an appeal moot, but no party here has asked the court to dismiss this original proceeding as moot. Thus, we review only whether the trial court abused its discretion in finding no good cause to continue trial beyond the scheduled

date of October 26, 2020. As discussed *ante*, we hold that the court did not abuse its discretion.

At oral argument, counsel for Petitioners suggested this court could consider the current circumstances and issue an opinion providing guidance for the trial court to consider when it schedules trials and other proceedings, including guidance that trial in this proceeding should be continued indefinitely. Such relief, however, is beyond the scope of the writ petition. In their prayer for relief, Petitioners simply asked this court to issue a writ directing the respondent court to vacate its order denying their application for a continuance and to enter a new order granting the application.

Thus, at most, the only relief requested was to direct the respondent court to continue trial to April 2021. Upon finality of this writ proceeding, petitioners will have largely received the relief requested and any attempt by this court to prospectively determine whether trial should proceed would be improper. At that time, the situation may have worsened, making *any* trial inadvisable. Conversely, it is equally possible that the widespread vaccination of the population will have significantly lessened the public health concerns relied upon by Petitioners. In either scenario, it would be improper for this court to attempt to determine whether a future trial date should be continued for good cause. Any such determination must be presented to the trial court in the first instance.

We do not, however, intend to ignore the change in circumstances or the dynamic situation presented by the COVID-19 pandemic. Rather, it is simply too difficult, if not impossible, for this court to forecast the situation that will exist upon the finality of these writ proceedings, which may be delayed by additional Supreme Court review. Given the shifting nature of the pandemic, trial courts must maintain flexibility to address the local

situation as it exists at the time it considers the scheduling of trials and other court proceedings, as recognized by the California Chief Justice. Included in the requests for judicial notice was an advisory issued by Chief Justice Cantil-Sakauye on December 7, 2020. In that advisory, the Chief Justice notes that "our courts are exempt from closure," recognizes that statewide orders would be "inappropriate and would impair the flexibility trial and appellate courts need to respond to local conditions and access to justice," and reaffirms the ability of courts to "assess their circumstances and ability to operate under their local constraints." (*Ibid*.) Following the lead of our Chief Justice, we will not interfere with the trial court's discretion to "continue to balance constitutional and statutory rights with the safety and health of all court users, employees, jurors, justice partners, and judicial officers." (*Ibid.*)

DISPOSITION

The petition for writ of mandate is denied. The stay issued by the Supreme Court of California on October 26, 2020, will expire 10 days after finality of this opinion. The opinion will be final as to this court 10 days after the date of filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).) The parties shall bear their own costs.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

23